**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William James SWACKER,**
**Defendant–Appellant.**

**No. 79–1590.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 15, 1980.

Decided Sept. 29, 1980.

Frank S. Wright, Dallas, Tex., for defendant–appellant.

Sam Coon, Asst. U. S. Atty., Reno, Nev., on brief; Philip M. Pro, Asst. U. S. Atty., Reno, Nev., for plaintiff–appellee.

Before DUNIWAY, ANDERSON, and TANG, Circuit Judges.

**J. BLAINE ANDERSON, Circuit Judge:**

Appellant William James Swacker was convicted in a jury trial for mail fraud, telephone fraud, conspiracy and aiding and abetting in violation of 18 U.S.C. §§ 1341, 1343, 371 and 2, respectively. He appeals the convictions, contending that:

1. the admission at trial of his grand jury testimony violated his fifth amendment right against self–incrimination;

2. the trial judge's participation in the trial denied him a fair and impartial trial;

3. The prosecutor's closing argument deprived him of a fair and impartial trial;

4. the indictment should have been dismissed because of pre–indictment delay; and

5. the evidence was insufficient to support his conviction on any of the counts.

We affirm the conviction.

## I. BACKGROUND

The appellant was convicted for his alleged participation in a scheme in which fees were received to secure loan financing for businesses. The scheme involved a mortgage brokerage company, Mutual Investment Services (Mutual); a financing corporation, Security Guaranty Corporation (Security); and an investment trust company, Chase National Trust (Chase), which was owned by the appellant.

An individual, C. Rick Miles, seeking financing for his recreational condominium project, entered into a contract with Mutual. Under the contract, Mutual was to find financing for Miles in exchange for a fee of $9,000.00 in advance and $9,000.00 when the financing was actually acquired. Miles paid $8,000.00 of the advance payment.

To fulfill its part of the bargain, Mutual arranged for Security to issue a letter of credit to Miles for $300,000.00. The letter was to be used by Miles to obtain loans from commercial lending institutions. The letter stated that Chase held on deposit assets belonging to Security in the sum of about $50 million in securities and other assets. Also, it was represented that Chase would set aside and maintain on deposit sufficient assets of Security's to secure the letter of credit issued by Security.

After repeated efforts to obtain funding had failed, Miles contacted appellant by phone to get verification of the assets that were supposedly backing up Security's letter of credit. Miles also received a letter signed by the appellant stating that $300,-000.00 in assets were being set aside to back up the letter of credit issued by Security.

Miles was never able to obtain funding based upon the letter of credit he had received from Security. The advance payment he made was not returned.

## II. DISCUSSION

### A. Admission of the Appellant's Grand Jury Testimony

The appellant argues that the admission of his grand jury testimony at trial violated his fifth amendment privilege against self–incrimination.

The fifth amendment privilege "proscribes only self–incrimination obtained by a 'genuine compulsion of testimony.'" United States v. Washington, 431 U.S. 181, 187, 97 S.Ct. 1814, 1818, 52 L.Ed.2d 238 (1977); see also, Garner v. United States, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976), and New Jersey v. Portash, 440 U.S. 450, 459, 99 S.Ct. 1292, 1297, 59 L.Ed.2d 501 (1979).[1] In the ordinary case, where an individual who is called upon to testify as a witness reveals self–incriminating informa-

---

1. Appellant's reliance on New Jersey v. Portash, supra, is wholly without merit. In Portash, the defendant was an immunized witness before a state grand jury. The Supreme Court held that this was compulsion "in its most pristine form." (440 U.S. at 459, 99 S.Ct. at 1297.) Here, appellant was not immunized.

Appellant's appearance before the grand jury in obedience to a subpoena is not testimonial compulsion. Such a witness retains his Fifth and Sixth Amendment rights before the grand jury, and appellant was so advised before giving any of his grand jury testimony.

tion instead of claiming the privilege, the government is not deemed to have "compelled" the self–incrimination. *Garner v. United States*, 424 U.S. at 654, 96 S.Ct. at 1182. Only the witness knows whether the information that is sought may be self–incriminating, and the burden therefore lies appropriately with him to make a timely assertion of the privilege. *Id.* at 655, 96 S.Ct. at 1182. If the witness discloses self–incriminating information without claiming the privilege, the fifth amendment is not violated by even the most damning admissions. *United States v. Washington*, 431 U.S. at 187, 97 S.Ct. at 1818.

In *United States v. Washington*, a person who was suspected of participating in a theft was called upon to testify before a grand jury investigating the theft. He was given warnings concerning his right to remain silent, a card containing *Miranda* warnings, and he signed a form which acknowledged his waiver of the privilege against self–incrimination. However, he was not told that he was a target of the investigation. After testifying, he was indicted for his involvement in the theft.

The Supreme Court reversed the lower court's ruling that the grand jury testimony given by the witness could not be used against him in a later prosecution for the theft when the witness had not been informed in advance that he was a targeted suspect. The fact that the witness had not been told that he was a targeted suspect was deemed to be irrelevant. The Supreme Court ruled that:

"It is firmly settled that the prospect of being indicted does not entitle a witness to commit perjury, and witnesses who are not grand jury targets are protected from compulsory self–incrimination to the same extent as those who are. Because target witness status neither enlarges nor diminishes the constitutional protection against compelled self–incrimination, po-

tential defendant warnings add nothing of value to protection of Fifth Amendment rights."

*Id.* at 189, 97 S.Ct. at 1820. There was no question that the witness had been advised of his right to remain silent and that statements made by him could be used against him. These warnings showed that the self–incriminating statements had not been compelled.[2] Thus the Court held that the witness' grand jury testimony could be properly used against him in a subsequent trial for the theft.

■ The instant case presents an analogous situation. Here, the appellant was subpoenaed to appear before the federal grand jury in Reno, Nevada, which was investigating fraudulent loan practices in Nevada. Although the appellant was not advised that he was a target of the grand jury investigation, he concedes that he was advised of his rights prior to testifying. After testifying before the grand jury, the appellant was indicted and his grand jury testimony was used against him as substantive evidence at trial. Although the district court's ruling did not resolve the fifth amendment issue, the facts reveal that the appellant's fifth amendment privilege had not been violated by the admission of his grand jury testimony.[3]

The appellant also appears to argue that the admission of the grand jury testimony forced him to testify at trial in violation of the fifth amendment. The fact that the appellant felt compelled to take the stand presents no constitutional question. The grand jury testimony was properly admissible. The appellant's decision to testify in order to explain the prior testimony presents no different situation than where a defendant elects to take the stand to counter or explain incriminating evidence or testimony presented by an independent source.

We affirm the admission of the appellant's grand jury testimony.

---

**2.** The Supreme Court, in *United States v. Washington, supra*, 431 U.S. at 190, 97 S.Ct. at 1820, did not decide whether such warnings were constitutionally required, and thus whether the statements would have been deemed compelled if the warnings had not been given.

**3.** The district court essentially ruled that the grand jury testimony was an admission and therefore not hearsay. Thus the grand jury testimony was deemed admissible as substantive evidence under Fed.R.Evid. 801(d)(2)(A).

### B. District Judge's Participation in the Trial

■ Appellant alleges that the trial judge's conduct during the trial so prejudiced the proceedings that he was deprived of a fair trial. We do not agree.

A "district court may properly participate in the examination of witnesses for the purpose of 'clarifying the evidence, controlling the orderly presentation of the evidence, confining counsel to evidentiary rulings, and preventing undue repetition of testimony.' (*United States v. Malcolm* (9th Cir. 1973), 475 F.2d 420, 427)." *United States v. Allsup*, 566 F.2d 68, 72 (9th Cir. 1977). However, a district judge must, at all times, avoid the appearance of giving aid to one party or another. *Id.*

Although the district judge's participation in the trial was extensive at times, the court's purpose was to clarify testimony and to expedite examination in a non–prejudicial manner. Additionally, the court carefully instructed the jury to disregard any inference that possibly could have been suggested by the court's development of the facts and reminded the jurors that they were the sole judges of the facts. Under these circumstances, we cannot say that the district judge's participation in the proceedings deprived the appellant of a fair trial.

### C. Prosecutor's Closing Argument

■ The appellant argues that the prosecutor, during his closing arguments, related his personal opinion about the credibility of testimony and brought forth testimony that was not in the record. Although the prosecutor's closing argument was not exemplary, any prejudicial effect his comments may have had was not sufficient to require reversal. *See, United States v. Potter*, 616 F.2d 384, 391–394 (9th Cir. 979).

### D. Pre–Indictment Delay

■ Pre–indictment delay may result in the denial of a defendant's right to due process of law. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). In deciding whether a pre–indictment delay requires the dismissal of an indictment, a court must first find that actual prejudice has been suffered by the defendant due to the delay. *United States v. Mays*, 549 F.2d 670, 677–678 (9th Cir. 1977).[4] The burden of demonstrating actual prejudice is upon the defendant and the proof must be definite and not speculative. *Mays, supra; United States v. West*, 607 F.2d 300, 304 (9th Cir. 1979).

■ The appellant alleges that prejudice resulted from the prosecution being able to gain a tactical advantage as a result of the delay. The appellant claims that his culpability, if any, was minimal compared to that of his alleged co–conspirators; that the others were indicted earlier and were dealt plea bargains in return for their testimony against him; and, as a result, he was left in a worse position than if he had been indicted with the others.

The district court ruled that no actual prejudice had been demonstrated and thus denied the motion to dismiss the indictment. We agree. It is only speculative whether the appellant would have fared better had he been indicted along with his alleged co–conspirators. The same plea bargains might have been reached, even if the appellant had been indicted with the others. At that point, if the appellant had decided to go to trial, he probably would have been faced with the same circumstances.[5] The district court's decision is affirmed.

### E. Sufficiency of the Evidence

■ In reviewing the denial of a motion for acquittal, we view the evidence and

---

4. The other factors which must be considered are the length of the delay and the reason for the delay. *United States v. Mays*, 549 F.2d 678.

5. Moreover, the district court found, and we agree, that there was no culpability on the part of the prosecution for the pre–judgment delay. The delay was a result of a valid prosecutorial

decision to wait until they were more certain of the nature of appellant's involvement in the scheme. *See, United States v. Lovasco*, 431 U.S. at 794–797, 97 S.Ct. at 2051–52; *United States v. Valenzuela*, 596 F.2d 824, 826 (9th Cir. 1979).

inferences therefrom in the light most favorable to the government, and determine whether "the jurors could reasonably decide that they would not hesitate to act in their own affairs upon factual assumptions as probable as the conclusion that the defendant is guilty." *United States v. Oropeza,* 564 F.2d 316, 321 (9th Cir. 1977).

After a review of the evidence and the inferences that could be drawn from the evidence, we conclude that a jury could reasonably decide that the defendant was guilty as charged.

The defendant's conviction is

AFFIRMED.