**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Robert Eugene MILLS and Richard Raymond Pierce, Defendants-Appellees.**

No. 80–1540.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 5, 1981.

Decided April 6, 1981.

Rehearing and Rehearing En Banc
Denied June 25, 1981.

As Amended July 7, 1981.

Richard Drooyan, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellant.

Charles Diamond, O'Melveny & Myers, M. Randall Oppenheimer, Los Angeles, Cal., Edwin Saul, Encino, Cal., for defendants-appellees.

Before WRIGHT and NELSON, Circuit Judges, and EAST, Senior United States District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

On the government's appeal, two issues are presented: (1) was it error to dismiss two murder indictments for Fifth and Sixth Amendment violations, and (2) if so, should we direct the district court to vacate its order which compelled the government to produce statements of witnesses which it would not call at trial? We conclude: the dismissal of the indictments is reversed and the district court is directed to vacate the discovery order.

## I. FACTS

At oral argument we were told that inmates at the Federal Corrections Institution at Lompoc, California, committed at least 14 homicides in 1980. Thomas Hall, an inmate, was stabbed to death on August 22, 1979 and the appellees, Mills and Pierce, were believed to be implicated. Along with other inmates, they were questioned and given physical examinations by prison officials and FBI personnel.

On August 23, 1979, prison officials committed Mills and Pierce to the Administrative Detention Unit (ADU). Normal prison policy would have had them returned to the general inmate population or transferred to another institution within a few months. This was not done and they remained in segregation until they were arraigned on April 21, 1980.

During the eight months Mills and Pierce were in ADU, their activities were curtailed. They were not permitted to communicate with inmates not confined in ADU or potential non-inmate witnesses, to discuss their case with anyone other than prison

---

* Of the District of Oregon.

officials, or to be examined by their own physicians or experts. Mills and Pierce had opportunities for exercise, education, and employment, albeit at a reduced level.

In the course of disciplinary hearings conducted by the Bureau of Prisons in the first few weeks after Hall's death, Mills and Pierce said they wished to consult with an attorney. This was denied.

The government indicted Mills and Pierce for murder on March 27, 1980. Trial was originally set for June 30, 1980, but was continued to July 29, 1980 at Mills' and Pierce's request.

The trial court dismissed the indictments. It concluded the government failed to justify its delay in seeking the indictments or in bringing defendants to trial, or to explain why Mills and Pierce remained in isolation for eight months without assistance of counsel. It found that they had been irreparably prejudiced because of the dimming of memories of exonerating witnesses, the loss of witnesses and the deterioration of physical evidence.

## II. DISCUSSION

### A. Sixth Amendment Right to a Speedy Trial

■ We review the dismissal of an indictment for violation of the Sixth Amendment right to a speedy trial for abuse of discretion. *See United States v. Simmons*, 536 F.2d 827, 832 (9th Cir.), *cert. denied*, 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 130 (1976).

■ The Sixth Amendment speedy trial provision applies when a defendant is "accused." *United States v. Lovasco*, 431 U.S. 783, 788–89, 97 S.Ct. 2044, 2047–48, 52 L.Ed.2d 752 (1977); *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). That occurs with the filing of either a formal indictment or information "or else the actual restraints imposed by arrest or holding to answer a criminal charge . . . ." *Marion, supra*, 404 U.S. at 320, 92 S.Ct. at 463.

■ The trial court held Mills' and Pierce's Sixth Amendment rights were violated by the ten month delay between their detention in the ADU and the trial date. We disagree.

Administrative segregation by the prison board is not an "arrest" or "accusal" for speedy trial purposes. *United States v. Blevins*, 593 F.2d 646, 647 (5th Cir. 1979); *United States v. Clardy*, 540 F.2d 439, 441 (9th Cir.), *cert. denied*, 429 U.S. 963, 97 S.Ct. 391, 50 L.Ed.2d 331 (1976). In *Clardy*, this court held the identifying indicia of an arrest are absent in the prison setting.

> The prison discipline did not focus public obloquy upon appellants, did not disrupt their "employment" or drain appellants' financial resources. In short, it was not a public act with public ramifications, but a private act. Actual physical restraint may have increased and free association diminished, but unless we were to say that imprisonment *ipso facto* is a continuing arrest, these criteria bear little weight in the peculiar context of a penal institution where the curtailment of liberty is the general rule, not the exception.

*Id.*

In *Clardy*, two inmates were confined in segregation after the stabbing of an inmate. *Id.* They were indicted and arraigned five months later, and their trial commenced seven months after segregation. *Id.* The court rejected their argument that such discipline was an "arrest" for speedy trial purposes. *Id.*

We find nothing in the present case that warrants a different result. The detention in the ADU was at the request of the Bureau of Prisons. The detention orders stated that Mills and Pierce were awaiting investigation of a violation of institutional regulations and investigation or trial for a criminal act, and that their continued presence in the general prison population "pose[d] a serious threat to life, property, self, staff, other inmates, or to the security of the institution." There was no arrest or accusation until the grand jury indicted them on March 27, 1980. We agree with the Fifth Circuit that the *ad hoc* balancing test of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) does not apply. *Blevins, supra*.

B. *Sixth Amendment Right to Counsel*

The trial court also dismissed the indictment on the ground that Mills and Pierce were deprived of the Sixth Amendment right to counsel during the pre-indictment period.

█ The right to counsel attaches once adversary proceedings have commenced against a person. *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *United States v. Bagley,* 641 F.2d 1235 at 1238 (9th Cir. 1981). Initiation of adversary proceedings occurs by way of formal charge, preliminary hearing, indictment, information, or arraignment. *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). Therefore, unless a defendant is an "accused," the right to counsel is inapplicable. *United States v. Zazzara,* 626 F.2d 135, 138 (9th Cir. 1980).

█ Mills and Pierce were not arrested or accused until indicted in March 1980. Their Sixth Amendment claim to counsel during the pre-indictment period fails.

C. *Right to Prepare a Defense*

Mills and Pierce further support the dismissal of the indictment on the ground that the government denied their right to prepare a defense during the pre-indictment period.

█ We agree that the ability of an accused to prepare his defense is a fundamental aspect of our adversary system, *see Kinney v. Lenon,* 425 F.2d 209, 210 (9th Cir. 1970), but do not find that there was a deprivation here. This right, like the right to counsel, belongs to an *accused.* Mills and Pierce were not accused until indicted. They were then given the assistance of counsel and prepared their defense.

D. *Pre-Indictment Delay*

Seven months elapsed from the time Mills and Pierce were placed in the ADU until their indictment. The trial court found this pre-indictment delay deprived them of due process.

█ Pre-indictment delay may result in a denial of due process. *Lovasco, supra,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752, *United States v. Swacker,* 628 F.2d 1250, 1254 (9th Cir. 1980). To block a prosecution on this basis, a defendant must initially show actual prejudice resulting from the delay. *Swacker, supra; United States v. Stone,* 633 F.2d 1272, 1274 (9th Cir. 1979). The proof must be definite, not speculative. *Swacker, supra; United States v. Tousant,* 619 F.2d 810, 814 (9th Cir. 1980).

█ Prejudice is a necessary but not sufficient element of a due process claim.[1] *Lovasco, supra; United States v. Henry,* 615 F.2d 1223, 1232 (9th Cir. 1980). Once it is shown, the court must consider the reasons for and the length of the delay. *Swacker, supra,* 628 F.2d at 1254 n.4.

The trial court found Mills and Pierce were prejudiced by the dimming of memories of witnesses who allegedly could have supported their alibi, by the loss of witnesses known only by prison nicknames and now transferred to other facilities or released, and by the deterioration of physical evidence. It also concluded the delay was unreasonably long and unjustified since the government substantially concluded its investigation by October 1979.

Showing that witnesses have been lost or that evidence has become unavailable due to the delay suggests actual prejudice. *Tousant, supra.* But it is not enough to assert that potential witnesses have been lost. A defendant must identify the witnesses, relate the substance of their testimony, and efforts made to locate them. *Id.*

Mills and Pierce allege that identifying potential witnesses by prison nicknames, asserting that they have been unable to locate them, and that the witnesses' testimony would exonerate them is a sufficient showing. We disagree.

---

1. This required showing of prejudice is the most crucial difference between the Sixth Amendment and the Due Process tests. The Supreme Court has held that an affirmative demonstration of prejudice is not necessary to prove a denial of the constitutional right to a speedy trial, but is only one of the factors to be considered. (citations omitted). *United States v. Henry,* 615 F.2d 1223, 1232 n.12 (9th Cir. 1980).

■ Prison nicknames do not erase the element of speculation. There was no showing that these nicknames were recorded and actual identities or the existence of the witnesses could not be ascertained with any certainty.

Even assuming nicknames are sufficient identification, the substance of the witnesses' testimony is no more than mere speculation. Mills alleges they would support his alibi that he was in the mess hall at the time of the murder. Pierce indicated they "might" have information that would be of assistance in formulating a defense.

There is no evidence to support Mills' contentions other than his self-serving affidavit. The lack of the actual content of the witnesses' testimony prevents accurate evaluation of its benefit or detriment to him. *See United States v. Mays*, 549 F.2d 670, 679–80 (9th Cir. 1977).

> As it stands now, a trier of fact might as well assume that the [witnesses] would have placed *all* of the blame on the defendants, as to assume that they would have *exonerated* them.

*Id.* at 680 (emphasis in original).

Pierce's claim that the missing witnesses might have been useful does not show actual prejudice. *United States v. West*, 607 F.2d 300, 304 (9th Cir. 1979).

Nor does the claim that the witnesses' memories have dimmed without proof of impairment constitute actual prejudice. *United States v. Rogers*, 639 F.2d 438 (8th Cir. 1981); *Mays, supra.*

Mills and Pierce also argue they were prejudiced by the destruction of evidence. They claim useful documents were discarded routinely or lost by the government. Blood stains on clothes taken from Mills could not be typed to prove their origin. Finger impressions on Pierce's arm and a wound on Mills' arm had healed.

There is no evidence about the deterioration rate of the blood stains, when Mills' and Pierce's wounds healed, or when the documents were destroyed or lost. They could have become unavailable for defendants' purposes even if the government had indicted defendants one month after the murder. Consequently, it cannot be said that the unavailability of this evidence was related to a pre-indictment delay. *See United States v. Walker*, 601 F.2d 1051, 1057 (9th Cir.1979).

We also note that this is not the appropriate time to determine whether the government had any obligation to preserve certain evidence. *Id.*

■ We find that there was insufficient evidence to establish actual prejudice. The district court abused its discretion in dismissing the indictment. It is unnecessary to consider the length of or the reason for the delay.[2] *West, supra,* 607 F.2d at 305.

### E. *Discovery*

By petition for writ of mandamus, the government appeals the trial court's order requiring production of statements of inmates the government had interviewed but did not intend to call as witnesses.

The production of witness statements is governed by the Jencks Act. *Palermo v. United States*, 360 U.S. 343, 351, 79 S.Ct. 236, 3 L.Ed.2d 227 (1959); *United States v. Walk*, 533 F.2d 417, 419 (9th Cir. 1975). The Act provides that no statement of a government witness is discoverable until

---

2. Our decision would be no different if we consider these factors. Mills and Pierce argue the delay of eight months was inexcusable because the government had interviewed most witnesses and evaluated the tangible evidence by mid-November 1979. However,

> it is not enough to show that the prosecution could have proceeded more rapidly or that there were some months during the period of delay in which no additional investigation was taking place. The prosecution is not expected to account meticulously for each month that is taken in carrying out the appropriate prosecutorial functions.

*United States v. Walker*, 601 F.2d 1051, 1056 (9th Cir. 1979). There must be some culpable conduct by intentionally or recklessly delaying indictment to gain a tactical advantage. *See United States v. Swacker*, 628 F.2d 1250, 1254 n.5 (9th Cir. 1980); *Walker, supra.*

There was no evidence of intentional government delay. The investigation was ongoing until defendants were indicted.

We also note that eight months is not an inordinate delay. *See, e. g., Walker, supra*, at 1054 (thirteen-month delay); *United States v. Mays*, 549 F.2d 670 (9th Cir. 1977) (four-and-one-half year delay).

the witness has testified on direct examination. 18 U.S.C. § 3500(a); *United States v. Jones*, 612 F.2d 453, 455 (9th Cir. 1979), *cert. denied*, 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980).

█ Federal Rule of Criminal Procedure 16(a)(2) excludes from pretrial discovery "statements made by government witnesses or prospective government witnesses, except as provided in 18 U.S.C. § 3500 [Jencks Act]." For the purposes of Rule 16, statements made by persons who were prospective witnesses when interviewed do not lose that character by a subsequent decision not to call them at trial.

Consequently, Mills' and Pierce's contention that the statements are discoverable as documents under Federal Rule of Criminal Procedure 16(a)(1)(C) fails. The trial court exceeded its authority by ordering the production of these statements over the government's objection. *United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974).

Our result is consistent with the policies underlying these discovery rules. Rule 16(a)(1)(A) authorizes broad pretrial discovery of defendant's statements because they are deemed vital to the defense. *Percevault, supra.* But this reasoning is not pertinent to statements made by prospective government witnesses. Protection of their statements is necessary to protect the witnesses from threats, bribery, and perjury. *Walk, supra; Percevault, supra.* The need to protect those who cooperate with the government is especially compelling here where the witnesses are prison inmates who live in fear of retaliation for providing evidence against fellow inmates. Depriving them of that protection also jeopardizes the likelihood of future cooperation by prison inmates.

The writ is granted.

REVERSED and REMANDED for further proceedings.

NELSON, Circuit Judge, concurring specially:

I concur in the majority opinion. I must add that the facts of this case are unquestionably troubling. The conduct here creates a visceral reaction that this must be some kind of constitutional violation. The trial court's decision is thus understandable, and I regret that the law requires reversal.

Today's result must not be read, however, as suggesting that due process stops at the jailhouse door. The government cannot brazenly disregard prisoners' constitutional rights when preparing a criminal case against an inmate.

It is important to note that the instant appeal involves dismissal of the indictment by the lower court. In my view, defendants' strongest arguments are those alleging that their isolation wrongfully precluded them from engaging in the activities necessary to prepare an effective defense. Such a due process claim goes to the heart of a defendant's constitutionally protected right to defend himself at trial. The defendants' claims would thus be appropriately raised at trial. Our decision today, which reviews only the dismissal of the indictment, does not foreclose defendants from doing so.