19 F.3d 31
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Chester Linden MORTON, Defendant-Appellant.
 No. 92-50335.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 7, 1993.
Decided Feb. 25, 1994.
 
 Before: TANG, D.W. NELSON, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Chester Morton appeals from his conviction following trial by jury on two counts of possessing methamphetamine with the intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1). We affirm both the conviction and sentence.
 
 I. Search Warrants
 A. The Informant
 
 3
 We reject Morton's argument that the affidavit in support of the search warrants was facially deficient because it lacked any information to support the allegation that the informant was reliable. The mere fact that Mrs. Ware had not previously been a police informant does not, in and of itself, lead to the conclusion that she is unreliable. As for Morton's contention that the informant's statements had to be independently corroborated, the assertion that the Wares were criminal participants relies solely on facts as alleged by Morton.
 
 
 4
 Moreover, the informant's statements were in fact corroborated by the police. Detective Thayer's affidavit states that the police were contacted by a confidential informant who informed them that Morton was storing items of property with the Wares in which illegal drugs were concealed, that the Wares were not involved with the illegal drugs, and that Morton had been recently released from prison where he was serving a sentence for drug violations. The affidavit goes on to state that the police went to the Wares's home, that they were shown illegal drugs concealed in Morton's items of property, that the Wares expressed surprise at the discovery of the illegal drugs, and that the police later verified the fact that Morton had been in prison for drug violations.
 
 B. Staleness of Information
 
 5
 We also reject Morton's claim that the information given to Detective Thayer by the Wares was too old to support a finding of probable cause. "Staleness" is evaluated in light of the particular facts of the case and the nature of the criminal activity and property sought. United States v. Greany, 929 F.2d 523, 525 (9th Cir.1991). The factors we consider include the ongoing nature of the crime, which might lead to the maintenance of tools of the trade, and the opinions of experienced law enforcement officers. United States v. Hernandez-Escarsega, 886 F.2d 1560, 1567 (9th Cir.1989). Just because some information in an affidavit is old does not thereby render it too stale when more recently obtained corroborating information is presented. Id.
 
 
 6
 Recent information was available, both about Morton's continuing storage of methamphetamine at Mr. Ware's business and about Morton's efforts to retrieve those drugs. Moreover, the affidavit indicated both that the drugs had been stored for years and that Morton was attempting to reclaim them. This is not stale evidence, and the district court properly denied Morton's motion to suppress the evidence on this ground.
 
 C. Franks Hearing
 
 7
 Morton argues that he was entitled to a Franks[1] hearing because Mr. Ware deliberately made at least three false statements which were not all included in the warrant affidavit, even though the affiant stated at trial that he questioned Mr. Ware's reliability. Only the veracity of the affiant is at issue in determining whether to grant a Franks hearing, see United States v. Perdomo, 800 F.2d 916, 921 (9th Cir.1986), and the only untruths which Morton alleges are those of Mr. Ware. Morton was not entitled to a Franks hearing because he failed to meet the first of two threshold requirements for obtaining one. See Franks v. Delaware, 438 U.S. 154, 171 (1978) (a defendant must allege and show the existence of a deliberate falsehood or reckless disregard for the truth).[2]
 
 D. Consent to Search
 
 8
 Morton claims that Mr. Ware was a bailee and bailees lack the authority to consent to the search and seizure of items in their care. This contention is meritless. Those who have common control over property can consent to its search, and Mr. Ware had such access and control over the property in question to justify his consent to the search. See United States v. Matlock, 415 U.S. 164, 171 n. 7 (1974); United States v. Brannan, 898 F.2d 107, 108 (9th Cir.), cert. denied, 498 U.S. 833 (1990).
 
 E. Scope of Consensual Search
 
 9
 Morton next argues that a warrant was required to permit a test of the drugs because either Detective Thayer's field test or the subsequent lab test exceeded the scope of Mr. Ware's private search or consent to search. A field test which "merely discloses whether or not a particular substance is [an illegal drug] does not compromise any legitimate interest in privacy" and is permissible without a warrant. United States v. Jacobsen, 466 U.S. 109, 123 (1984). As for the contention that the lab analysis was impermissible absent consent or a search warrant, we note simply that the search was consensual because Mr. Ware, who had joint control over the items, permitted the search.
 
 II. Fifth Amendment
 A. Morton's First Trial Testimony
 
 10
 Morton argues that his waiver of his right not to testify was involuntary at his first trial because the trial court struck the testimony of defense witness Cynthia Tandy, thereby forcing Morton to testify to what she would have said.[3] We reject this contention. Before Ms. Tandy testified, the district court required defense counsel to give notice before any witness was going to incriminate herself or himself, so that the court could appoint counsel for that witness. Defense counsel called Ms. Tandy without prior notice to the court and elicited self-incriminating testimony. The district judge stopped the proceedings and appointed counsel for those defense witnesses who intended to incriminate themselves. After consulting with Ms. Tandy, her lawyer informed the court that she would be asserting her Fifth Amendment right not to testify pursuant to his advice. He also moved to strike her testimony. Because defense counsel failed to comply with the court's instructions, and the prosecution would have been unable to cross-examine a witness who now asserted her right to remain silent, the district court ordered Ms. Tandy's entire testimony stricken. This was not an abuse of discretion. See United States v. Seifert, 648 F.2d 557, 562 (9th Cir.1980).
 
 B. Comments by Prosecution
 
 11
 Morton also argues that the district court's decision to permit the government to read parts of his testimony from the first trial at Morton's second trial allowed the government to comment impermissibly on Morton's failure to testify on his own behalf. As Morton cites to no authority as direct support for this novel proposition, and we know of none, we find no error in the district court's ruling.[4]
 
 III. Selective Prosecution
 
 12
 Morton's claim that he was selectively prosecuted depends entirely on his version of the facts, a version which we cannot accept. We therefore reject this contention as well.
 
 IV. Vindictive Prosecution
 
 13
 Morton claims that the prosecution in this case was vindictive. To prevail on this issue, Morton must show not only that he asserted a protected right, but that the government had an improper purpose for the prosecution. See United States v. Gann, 732 F.2d 714, 723 (9th Cir.), cert. denied, 469 U.S. 1034 (1984). To show improper purpose, Morton must in turn prove either actual objective threats made by the government, or sufficient facts to create a presumption of vindictiveness. See United States v. Goodwin, 457 U.S. 368, 381 (1982); United States v. Sinigaglio, 925 F.2d 339, 342 (9th Cir.1991).
 
 A. Pre-trial Phase
 
 14
 In the case of pretrial decisions, there is no presumption of vindictiveness merely because additional charges are filed. Goodwin, 457 U.S. at 381-82. Thus, in order to prevail Morton must show actual vindictiveness. Morton failed to allege and show any threats made by the government in response to his assertion of a constitutional right. Thus, in the two instances in which Morton claims pretrial vindictiveness in his prosecution, his claims fail.
 
 B. Post-trial Phase
 
 15
 When an appellant alleges vindictive post-trial prosecution, a presumption of vindictiveness may apply.[5] We assume without deciding that the vindictiveness presumption applies here. The government must dispel this presumption by showing that the decision to change the charges "did not stem from a vindictive motive, or was justified by independent reasons or intervening circumstances that dispel the appearance of vindictiveness." See United States v. Gallegos-Curiel, 681 F.2d 1164, 1168 (9th Cir.1982). Accord United States v. Motley, 655 F.2d 186, 190 (9th Cir.1981) (government must point to objective factors to support decision to increase possible punishment).
 
 
 16
 Here, the government justifies the new charge on the second quantity of methamphetamine by pointing to "the fact [that] defendant made incriminating admissions at the first trial with regard to this quantity and ... the reasons for not charging this quantity--presenting a short, streamlined case--were no longer present since defendant intended to introduce the previously uncharged drugs into evidence even if the government did not." The government had objective reasons justifying its conduct and Morton was not vindictively prosecuted.
 
 V. Fair Trial
 
 17
 Morton claims that he did not receive a fair trial because of the cumulative effect of the trial court's allegedly erroneous rulings. As discussed earlier, Morton is wrong when he claims that the district court erred in making two of these rulings. Because Morton neither cites to any controlling authority, nor makes any argument for the remainder of his assertions, we conclude that the district court's rulings with respect thereto were proper.
 
 VI. Sentencing
 
 18
 Morton contends that his sentence should have been only five years instead of ten because the second superseding indictment should have been dismissed. This argument is apparently based on Morton's contention that the indictment should have been dismissed due to vindictive prosecution. As there was no vindictive prosecution, there was no error in the decision not to dismiss the second superseding indictment.
 
 
 19
 Because we find no merit to any of Morton's remaining arguments, the conviction and sentence appealed from are both
 
 
 20
 AFFIRMED.
 
 
 
 *
 This disposition is not suitable for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 See Franks v. Delaware, 438 U.S. 154 (1978)
 
 
 [2]
 The second threshold inquiry requires a defendant to demonstrate that the challenged material was essential to a finding of probable cause. United States v. Whitworth, 856 F.2d 1268, 1280-82 (9th Cir.1988), cert. denied, 489 U.S. 1084 (1989)
 
 
 [3]
 Admitting Morton's prior testimony did not violate his right not to incriminate himself unless his prior testimony was involuntary. See United States v. Swacker, 628 F.2d 1250, 1252 (9th Cir.1980) ("The fifth amendment privilege proscribes only self-incrimination obtained by a genuine compulsion of testimony.") (internal quotation omitted)
 
 
 [4]
 Indeed, were Morton correct, the government would never be permitted to introduce a defendant's prior statement unless he testified, irrespective of the voluntariness of that earlier statement
 
 
 [5]
 In United States v. Motley, 655 F.2d 186, 188 n. 1 (9th Cir.1981), we applied the presumption of vindictiveness to a post-trial increase in charges where the prosecution objected to the granting of a mistrial in the first trial and held that the sequence of events led to a presumption of vindictive prosecution. To warrant a presumption of vindictive prosecution, Morton must show that the prosecution filed charges of increased severity because Morton exercised a statutory, procedural, or constitutional right under circumstances giving rise to an appearance of vindictiveness. See United States v. Gallegos-Curiel, 681 F.2d 1164, 1168 (9th Cir.1982)
 In this case, the government argues that the presumption announced in Motley should not apply because the government did not object to the granting of a mistrial. See United States v. Khan, 787 F.2d 28, 33 (2d Cir.1986). The government also points out that the new charges were not made in response to Morton asserting a right, but rather were in response to the first jury's inability to reach a decision.