UNITED STATES of America,
Plaintiff-Appellee,

v.

William GOUVEIA, Robert Ramirez, Philip Segura, Adolpho Reynoso, Robert Eugene Mills, Richard Raymond Pierce, Defendants-Appellants.

Nos. 81–1271 to 81–1274, 82–1206 and 82–1278.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 15, 1982.

Decided April 26, 1983.

Nancy Wieben Stock, Joyce Ann Babst, Richard E. Drooyan, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Michael J. Treman, Santa Barbara, Cal., for Gouveia.

Joseph Francis Walsh, Los Angeles, Cal., for Ramirez.

Joel Levine, Los Angeles, Cal., for Segura.

Manuel U.A. Araujo, Los Angeles, Cal., for Reynoso.

Charles P. Diamond, Los Angeles, Cal., for Mills.

Edwin S. Saul, Encino, Cal., for Pierce.

Before BROWNING, Chief Judge, WRIGHT, CHOY, SNEED, KENNEDY, ANDERSON, HUG, SCHROEDER, POOLE, FERGUSON, and NELSON, Circuit Judges.

SNEED, Circuit Judge:

Appellants Reynoso, Segura, Ramirez, and Gouveia have been convicted of murdering a fellow inmate at the Federal Correctional Institution in Lompoc, California (FCI-Lompoc). Appellants Mills and Pierce, also inmates at FCI-Lompoc, were convicted of a later murder at the same institution. Each appellant was isolated in administrative detention without the benefit of counsel for an extended period prior to being indicted. We consolidated these cases for en banc consideration of whether, under any circumstances, a federal prisoner suspected of committing a crime while in prison and placed in administrative detention is constitutionally entitled to an attorney prior to indictment.

# I.

## FACTS

### A. *Appellants Reynoso, Segura, Ramirez, and Gouveia*

Thomas Trejo, an inmate at FCI-Lompoc, was stabbed to death on November 11, 1978. The Bureau of Prisons instituted an administrative investigation and on December 4, 1978, the Unit Disciplinary Committee and the Institutional Disciplinary Committee at FCI-Lompoc conducted administrative hearings to consider appellants' involvement in the killing. Appellants Ramirez and Reynoso requested appointment of counsel at the hearings, but their requests were denied. Prison officials found that appellants had killed Trejo and appellants were placed in isolation in the administrative detention unit (ADU) at FCI-Lompoc.

Appellants remained in ADU continuously until July of 1980, a period of more than 19 months. While in ADU appellants were confined in individual cells except for short daily exercise periods; they were denied access to the general prison population and their participation in various prison programs was curtailed. Appellants did have access to legal materials, they had visitation rights, and they could make unmonitored phone calls. During this period appellants were not appointed counsel though their opportunity to hire private counsel was not restricted.

The Federal Bureau of Investigation conducted its own investigation into Trejo's murder, concurrent with the Bureau of Prison's internal investigation. In January 1979, the United States Attorney's Office was officially informed of the FBI investigation and a prosecutive file was opened. In March 1979, a grand jury investigation commenced. Appellants Reynoso, Ramirez, and Segura appeared before the grand jury to provide fingerprint exemplars and they were appointed counsel for purposes of that appearance.

On June 17, 1980, the grand jury indicted appellants on charges of first degree murder and conspiracy to commit murder in violation of 18 U.S.C. §§ 1111, 1117. On July 14, 1980, appellants were arraigned in federal court and the magistrate appointed counsel. Appellants' first trial commenced on September 16, 1980, but it resulted in a mistrial when the jury was unable to reach a verdict. A second trial began on February 17, 1981, and all four appellants were convicted on both counts. They were each sentenced to consecutive life and ninety-nine year terms of imprisonment.

### B. *Appellants Mills and Pierce*

Thomas Hall, an inmate at FCI-Lompoc, was stabbed to death on August 22, 1979. Appellants Mills and Pierce were questioned and given physical examinations by FBI agents and prison officials. They were placed in ADU on the day following the murder. An internal prison investigation culminated in a hearing before the Institutional Disciplinary Committee on September 13, 1979. Appellants were adjudged guilty of killing inmate Hall and, in accordance with prison regulations, were ordered to forfeit all accumulated "good time."

Mills and Pierce remained isolated in ADU for eight months. They were not permitted to communicate with inmates in the general population or other potential witnesses, to discuss their case with anyone other than prison officials, or to be examined by their own physicians or experts. During this time appellants repeatedly asked to speak with counsel but their requests were denied. On March 27, 1980, Mills and Pierce were indicted under 18 U.S.C. §§ 1111, 1792, for first degree murder of a federal inmate and for conveyance of a weapon in prison. Pierce was indicted also for assault under 18 U.S.C. § 113(c). On April 21, 1980, appellants were arraigned, appointed counsel, and released from ADU.

The district court dismissed the indictments on the grounds that appellants had been denied their constitutional rights to speedy trial and assistance of counsel. It concluded that the government failed to justify its delay in seeking the indictments or in bringing defendants to trial, or to explain why Mills and Pierce remained in

isolation for eight months without assistance of counsel. It found that they had been irreparably prejudiced because of the dimming of memories of exonerating witnesses, the loss of witnesses, and the deterioration of physical evidence.

On appeal this court reversed the dismissal, holding that the Sixth Amendment right to counsel and a speedy trial did not attach until appellants were indicted. *United States v. Mills,* 641 F.2d 785 (9th Cir.), *cert. denied,* 454 U.S. 902, 102 S.Ct. 409, 70 L.Ed.2d 221 (1981). We further held that the preindictment delay did not deny appellants due process because appellants could not demonstrate actual prejudice resulting from the delay. In January 1982, appellants were brought to trial, convicted on all counts, and sentenced to life imprisonment. On appellants' petition, we consolidated appellants' post-conviction appeal with *United States v. Gouveia* for reconsideration by the court sitting en banc of whether appellants were denied their constitutional right to counsel during the preindictment period in which they were isolated in ADU.

## II.

### THE SIXTH AMENDMENT RIGHT TO COUNSEL

Appellants claim, *inter alia,* that lengthy preindictment isolation without assistance of counsel irrevocably prejudiced their ability to prepare an effective defense, and thus unconstitutionally deprived them of their right to counsel and to a fair trial in contravention of the Fifth, Sixth, and Eighth Amendments. Because we conclude that appellants were denied their Sixth Amendment right to counsel, we do not reach the Fifth and Eighth Amendment claims.

The Sixth Amendment guarantees that: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This guarantee is meant to assure fairness in the adversary criminal process. *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.Ed.2d 564 (1981). The right to counsel is primarily a trial right. It has been held to attach at any point in the prosecution where an attorney is necessary to preserve the accused's right to a fair trial or to ensure that the accused will receive effective assistance of counsel at the trial itself. *See id.* at 364, 101 S.Ct. at 667; *United States v. Wade,* 388 U.S. 218, 225–27, 87 S.Ct. 1926, 1931–32, 18 L.Ed.2d 1149 (1967).

There is no dispute that Sixth Amendment guarantees are as applicable to the prosecution of prison crimes as to any other criminal prosecution. *See, e.g., United States v. Clardy,* 540 F.2d 439 (9th Cir.), *cert. denied,* 429 U.S. 963, 97 S.Ct. 391, 50 L.Ed.2d 331 (1976); *United States v. Blevins,* 593 F.2d 646 (5th Cir.1979). Thus appellants were appointed counsel at their arraignments. *See Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The issue before us is a narrower one though; it is a question of first impression that is unique to prison crime. We must decide whether the isolation of appellants in administrative detention pending investigation and trial obligated prison officials to provide counsel at any time prior to appellants' indictments.

Each appellant has established that while being held in administrative detention he lacked the means necessary to hire an attorney. This is significant because inmates held in administrative detention are not denied access to counsel. Though isolated from the general prison population, they have the opportunity to make unmonitored phone calls if they wish to talk to an attorney and they have visitation rights. 28 C.F.R. §§ 541.19(c)(10), 541.20(d) (1982). Thus, it is only indigent inmates, those who are without the means to retain counsel on their own, whose constitutional right to the assistance of counsel is before us today.

The government first argues that the appointment of counsel at arraignment fully satisfied appellants' constitutional rights to assistance of counsel. This position is based on *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), where the Supreme Court held that the Sixth Amendment right to counsel attaches when formal

judicial proceedings are initiated by way of indictment, information, arraignment, or preliminary hearing. *See also United States v. Bagley,* 641 F.2d 1235 (9th Cir.), *cert. denied,* 454 U.S. 942, 102 S.Ct. 480, 70 L.Ed.2d 251 (1981); *United States v. Zazzara,* 626 F.2d 135 (9th Cir.1980). The Court in *Kirby* reasoned that until adversary proceedings are initiated the suspect is not "accused" and no criminal prosecution is underway. Thus, by its own terms, the Sixth Amendment does not require that counsel be present at a preindictment identification proceeding. 406 U.S. at 689–90, 92 S.Ct. at 1882–83.

We, of course, are bound by the Supreme Court's decision in *Kirby.* However, *Kirby* is not a prison case. The point of "accusation" may be different for the prosecution of prison crimes, where the suspect is already incarcerated and subject to the discretion and discipline of federal authorities. The Supreme Court itself has recognized that the point of "accusation" for one purpose of the Sixth Amendment can vary from that of another. Thus, an arrest will trigger the Sixth Amendment right to a speedy trial even if no formal indictment has been brought. *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). That is because the arrest is a public act that seriously interferes with the suspect's liberty in a way that the speedy trial provision is designed to mitigate. *See id.* at 320, 92 S.Ct. at 463.

No Supreme Court case limiting the right to an attorney to post-indictment proceedings confronts the unique situation of a prisoner held in administrative detention. *Kirby* and cases interpreting it are based on the following assumption: "The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice." 406 U.S. at 689, 92 S.Ct. at 1882. And so it is, at least when non-inmates are accused of crime. But appellants were detained in solitary confinement for up to twenty months while the government prepared to prosecute them. Thus, the assumption in *Kirby*—that the indictment is the tool by which the suspect first is brought face-to-face with government prosecutorial forces—is not present in this case in precisely the same manner. Prior to indictment appellants have confronted the prison disciplinary processes with the result that each was found to be a murderer for which each was subjected to prison discipline.

The Supreme Court's opinion in *Marion* provides a guide to follow in determining whether a particular governmental act constitutes a criminal accusation for Sixth Amendment purposes. It shows that an accusation depends in part on whether the government's conduct in question has the particular consequences for a suspect that the Sixth Amendment guarantee is designed to prevent. Or, stated another way, whether a person stands accused can only be determined from the totality of circumstances. *See Escobedo v. Illinois,* 378 U.S. 478, 485–86, 84 S.Ct. 1758, 1762, 12 L.Ed.2d 977 (1964). It is true that a person outside prison is usually not accused until an indictment has been issued. *But see United States ex rel. Robinson v. Zelker,* 468 F.2d 159 (2d Cir.1972), *cert. denied,* 411 U.S. 939, 93 S.Ct. 1892, 36 L.Ed.2d 401 (1973) (holding that arrest warrant initiated state prosecution for *Kirby* purposes because New York law equates the issuance of an arrest warrant on probable cause with the filing of an indictment); *Commonwealth v. Richman,* 458 Pa. 167, 320 A.2d 351 (1974) (same). But appellants were subject to the discretion of government officials in a way that individuals outside prison are not. To determine whether prison disciplinary proceedings which culminate in administrative detention can in any circumstances constitute a criminal accusation, it is necessary that we examine its function and its impact on detainees suspected of a crime.

We note at the beginning that administrative detention is a "substantial deprivation of liberty." *Wolff v. McDonnell,* 418 U.S. 539, 594, 94 S.Ct. 2963, 2993, 41 L.Ed.2d 935 (1974) (Douglas, J., dissenting). As such, certain procedural guarantees—established both by judicial application of the Due Process Clause and by prison regula-

tions—govern its use. *See Hewitt v. Helms,* —— U.S. ——, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Appellants do not challenge the legitimacy of administrative detention in general or its appropriateness in the instant case. Rather, they contend that the removal of a prisoner to administrative detention because he is suspected of a crime is an accusation for the purpose of entitling him to appointed counsel provided at government expense. The government of course disagrees.

Administrative detention is imposed primarily in two situations. The first involves internal prison disciplinary proceedings. An inmate suspected of committing a crime in a Federal Correctional Institution first faces disciplinary action by prison officials. Virtually any state or federal crime is also a violation of prison regulations. *See* 28 C.F.R. § 541.11 (1982). And an inmate who is adjudged guilty of breaching prison regulations is subject to disciplinary penalties that range from temporary loss of privileges, or loss of built up "good time," to isolation in disciplinary segregation for up to sixty days.

▬ It is well established that prison disciplinary proceedings are not "criminal prosecutions" as that term is used in the Sixth Amendment. *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Inmates suspected of breaking prison rules must be given a hearing before the Institutional Disciplinary Committee but the full panoply of rights due a defendant in a criminal trial does not apply in disciplinary hearings. *Wolff v. McDonnell,* 418 U.S. at 556, 94 S.Ct. at 2974. Specifically, an inmate has no right to have retained or appointed counsel present at a disciplinary hearing. *Id.* at 570, 94 S.Ct. at 2981. Likewise, there is no right to counsel by reason of prehearing detention or detention imposed as a disciplinary measure.

Besides its disciplinary function isolation is imposed when necessary for security purposes. Prison regulations authorize the Warden to order temporary isolation in certain specified situations when an inmate's continued presence in the general prison population poses a serious threat to safety, security, or order. *See* 28 C.F.R. § 541.20 (1982). It is perhaps the principal remedy available to prison officials when crime or other disturbances threaten the prison environment.

Importantly, appellants do not contend that temporary isolation carries with it a right to appointed counsel when the detention is imposed for security reasons. Nor could they. Prison officials are charged with maintaining order and ensuring the safety of inmates and prison employees. Serious crimes compound the difficulty of this responsibility in what is necessarily a volatile environment. Temporary isolation, imposed to defuse a potentially explosive confrontation and to protect inmates from harm, is part of the correctional process. It is unrelated to any subsequent criminal prosecution.

Administrative detention at times serves an accusatory function, however. The Warden can isolate inmates "pending investigation or trial for a criminal act." 28 C.F.R. § 541.20(a)(3) (1982). In this situation detention is related to a subsequent prosecution. It furthers many of the same governmental interests served by an arrest outside the prison walls. The Supreme Court has recently recognized that confining inmates to administrative detention pending completion of the investigation of disciplinary charges serves the important need of investigative officers to protect witnesses and evidence, to facilitate an effective investigation, and to prevent further criminal activity by the suspect. *Hewitt v. Helms,* —— U.S. ——, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). These interests are important for nonprison crimes and in that situation they lead to an arrest at the earliest possible point. But they are important also for serious prison crimes where the insular character of the inmate population creates unique investigatory and evidentiary hurdles for the prosecution and leaves potential witnesses particularly vulnerable to retribution and coercion. The critical

fact is that for prison crimes the governmental interests that dictate the isolation of suspects do not lead to an arrest, nor prompt the early initiation of formal judicial proceedings, but rather cause the isolation of suspected inmates in administrative detention for what can be an indeterminate period.

The characterization of administrative detention pending trial as an "accusation" is buttressed when we consider the effect of isolation on the inmate's ability to defend the criminal charges. We note first that an inmate suspected of crime must overcome investigatory obstacles even greater than those facing the prosecution. The transient nature of the federal prison population makes difficult even the identification of potential witnesses. Combined with a hesitation on the part of potential inmate witnesses to cooperate this imposes a serious impediment to the preparation of an inmate's defense.

Thus early access to the general prison population is critical to the suspect's ability to prepare and preserve a defense. Yet during the time that appellants were in ADU only the government was free to conduct an investigation, contact witnesses, and preserve evidence. Isolated in solitary confinement appellants were unable to confer with potential defense witnesses, or even to keep track of their whereabouts. Cf. Smith v. Hooey, 393 U.S. 374, 378–83, 89 S.Ct. 575, 577–80, 21 L.Ed.2d 607 (1969) (speedy trial right protects prisoners who are subject to criminal prosecution in another jurisdiction). Appellants were powerless to exert their own efforts to mitigate the erosive effects of the passage of time.

The effect of administrative detention in cases such as these is to deny an inmate the opportunity to take steps to preserve his or her own defense. This distinguishes appellants from suspects outside of prison who have not yet been arrested or indicted. The position of appellants while being held in administrative detention pending investigation of their crimes more resembles that of a suspect outside of prison who has been arrested and detained than that of an outside suspect who has been neither arrested nor detained. Unconvicted suspects confined within prison walls suffer a serious disability.

The government correctly points out that outside of prison it is not an arrest that triggers the right to counsel but rather the initiation of adversary judicial proceedings. *Kirby v. Illinois,* 406 U.S. at 689, 92 S.Ct. at 1882; *United States v. Coades,* 468 F.2d 1061 (3d Cir.1972). This fact merely illustrates the need for a rule designed for prison crimes, however. Upon arrest a defendant must be arraigned "without unnecessary delay." Fed.R.Crim.P. 5(a). At that point the accused is guaranteed the assistance of counsel. No such procedural guarantees operate in prison, where the suspect may be isolated throughout the pendency of the government's investigation.

The Supreme Court long ago recognized the importance of counsel during the "critical period of the proceedings ... when consultation, thoroughgoing investigation and preparation [are] vitally important." *Powell v. Alabama,* 287 U.S. 45, 57, 53 S.Ct. 55, 59, 77 L.Ed. 158 (1932). In *Powell,* the deprivation occurred during the one day that passed between the defendant's arraignment and his trial. In the instant case, by contrast, the government was able to delay appellants' arraignments for up to twenty months, thereby effectively suspending the right to counsel until its case was built. This comparison serves to illustrate that an inmate who is suspected of a prison crime is in a unique position viz-a-viz the prosecution. Formal charges need not be brought until the government is ready for trial because the suspect can be isolated without being arrested. To insist that an inmate is not "accused" until formal charges are initiated is to ignore reality.

The government, nonetheless, denies that isolation pending trial can ever be an accusation. First, it cites a line of circuit cases which holds that administrative detention is not an arrest for purposes of the Sixth Amendment speedy trial right. Second, it emphasizes the administrative barriers that exist between prison administrators and the

prosecutorial arm of the federal government, arguing that detention is entirely within the province of prison officials. We find neither argument to be persuasive.

This court has held that administrative detention is not an "arrest" for speedy trial purposes. *United States v. Clardy,* 540 F.2d 439, 441 (9th Cir.), *cert. denied,* 429 U.S. 963, 97 S.Ct. 391, 50 L.Ed.2d 331 (1976); *accord, United States v. Blevins,* 593 F.2d 646 (5th Cir.1979); *United States v. Duke,* 527 F.2d 386 (5th Cir.), *cert. denied,* 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1190 (1976). In *Clardy* we based our decision on the conclusion that administrative detention does not implicate the major evils identified in *United States v. Marion* as those protected against by the speedy trial guarantee. 540 F.2d at 441. The evil that *Marion* attributed to an arrest was that it seriously interferes with defendant's liberty and therefore "may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." 404 U.S. at 320, 92 S.Ct. at 463. We held in *Clardy* only that administrative detention does not cause these consequences to the extent that an arrest does and therefore an inmate's detention does not start the speedy trial clock.

We do not question today that *Clardy* was correctly decided. It is simply inapposite to the question before us. Unlike the speedy trial right the assistance of counsel is constitutionally guaranteed not to minimize pretrial interference with defendant's liberty but because of the belief that without it, there can be no assurance that defendant will receive a fair trial. "The plain wording of ... [the assistance of counsel guarantee] encompasses counsel's assistance whenever necessary to assure a meaningful 'defence.'" *United States v. Wade,* 388 U.S. at 225, 87 S.Ct. at 1931.

The government also asserts that administrative detention cannot be accusatory because prison officials act on their own accord, and not as an arm of the prosecution, when inmates are placed in administrative detention. We need not inquire into the extent of cooperation between prison officials, the FBI, and the United States Attorney, however, because the relationship is of little consequence. Administrative detention is a "public act." *See United States v. Marion,* 404 U.S. at 320, 92 S.Ct. at 463. When detention is ordered as a disciplinary measure or to prevent disorder it is indeed a matter of internal prison administration. But when used to isolate an inmate pending trial both its purpose and effect are accusatory. It is not which arm of government orders detention but for what purpose and to what effect.

■ It is, therefore, clear that the administrative detention of an indigent inmate who is suspected of a crime does, under certain circumstances, give rise to the right to appointed counsel. The question is what are those circumstances. In prison there is no automatic device that triggers the right. It should not arise immediately when detention begins because there are substantial administrative and disciplinary concerns that justify detention but are unrelated to a criminal prosecution. And, as already pointed out, it should not be automatically postponed until indictment. The duty to appoint counsel "is not discharged by an assignment at such time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." *Powell v. Alabama,* 287 U.S. at 71, 53 S.Ct. at 65. By necessity then we must fashion a rule which preserves the right to effective assistance of counsel without impairing the authority of prison officials to carry out their administrative responsibilities.

## III.

### APPELLANTS WERE DENIED THEIR CONSTITUTIONAL RIGHT TO ASSISTANCE OF COUNSEL

Therefore, we must determine, first, at what point administrative detention gives an indigent federal inmate a right to appointed counsel and, second, whether appellants were held beyond that point. Inasmuch as the detention of an inmate suspect

serves a variety of goals the reasons for placing an inmate in detention will vary depending on the circumstances. Indeed, appellants no doubt were detained for a number of legitimate reasons.

However, prison regulations specify that administrative detention is "to be used only for a short period of time except where an inmate needs long-term protection." 28 C.F.R. § 541.20(c) (1982). Even when imposed for an inmate's protection, detention is limited to ninety days in all but the rarest of circumstances. *Id.* § 541.21(c). Therefore, the longer an inmate is isolated following the commission of a crime the more the detention takes the form of an "accusation" and the less it resembles either detention for protection of the inmate or for other purposes.

■ Likewise, the longer the inmate is held the greater the need for counsel. That is because the right to counsel is primarily a trial right. It does not attach until necessary to assure that the accused will receive effective assistance of counsel at the trial itself. *United States v. Wade,* 388 U.S. at 225–27, 87 S.Ct. at 1931–32. Counsel can effectively ameliorate the adverse consequences of detention so long as the appointment comes within a reasonable time following the institution of administrative detention. This is the principle upon which we base our holding. Guided by it we hold that a prisoner, who is being held in isolation because of an impending investigation and indictment related to a serious crime, must be provided counsel, subject to the same conditions as are applicable to an indigent following indictment, after a reasonable time. If counsel is not so provided he must be released into the general prison population.

Current prison regulations provide a standard against which to measure a "reasonable time." The maximum stay in isolation for purposes of discipline even for serious crimes is ninety days. This period consists of thirty days pending a disciplinary hearing and sixty days of disciplinary segregation which does not exceed this length even for serious crimes. 28 C.F.R. § 541.11 (1982).

■ Isolation for more than ninety days, then, is necessarily for some purpose other than discipline. If an inmate is held after the maximum disciplinary period has expired he should be allowed to show that his detention, at least in part, is due to a pending investigation or trial for a criminal act. The inmate must ask for an attorney, establish indigency, and make a prima facie showing that one of the reasons for continued detention is the investigation of a felony. At that point prison officials must either refute the inmate's showing, appoint counsel, or release the inmate back into the general prison population.

The Supreme Court's decision in *Hewitt v. Helms, supra,* is compatible with this structure. That case holds that the state created a liberty interest, protected by the due process clause, by promulgating mandatory regulations that establish specific substantive predicates to administrative detention. 103 S.Ct. at 871. Since regulations mandate that detention can be ordered only in specific circumstances, then the inmate has a concurrent due process right to ensure that the mandatory requisites in fact exist. Our case, while not governed by *Hewitt,* also utilizes regulations to provide specificity to a constitutional right. Federal prison regulations specify that administrative detention can only continue indefinitely where the detention is in contemplation of a criminal prosecution. In this way the prison regulations create a condition of confinement that embodies an accusation which generates a Sixth Amendment right to the assistance of counsel.

This structure achieves a proper balance of the interests of both prison officials and inmates suspected of crime. It does not require the government immediately to appoint counsel at the earliest stages of an investigation, before the adverse positions of government and inmate have solidified. *See Kirby v. Illinois,* 406 U.S. at 689, 92 S.Ct. at 1882. Nor does it involve counsel in disciplinary proceedings, thus reducing their utility as a means to further correctional goals. *See Wolff v. McDonnell,* 418

U.S. at 570, 94 S.Ct. at 2981. And it assures inmates who are suspected of crime, and who are ultimately prosecuted for that crime, that they will not be denied the effective assistance of counsel because of indigency. In this manner, equality with non-indigent inmates is preserved.

The rule also has the advantage of certainty. Whether an inmate is detained past ninety days in part as a pre-trial detainee can be determined from objective criteria. Prison regulations require the Warden to "prepare a memorandum detailing the reasons for placing an inmate in administrative detention, with a copy given to the inmate." 28 C.F.R. § 541.20(b) (1982). Moreover, the existence of an ongoing FBI investigation or a United States Attorney prosecutive file provides ample evidence that prosecution is pending. Once an inmate requests the assistance of an attorney and makes the necessary prima facie showing, the government bears the burden of establishing that prosecution is not a significant possibility. If unable or unwilling to make this showing the inmate must either be furnished counsel or be returned to the general prison population.

■ Turning finally to the facts of the instant case we find that appellants were denied their constitutional right to assistance of counsel. Each appellant remained in administrative detention long past the ninety days which we have held to constitute a reasonable period of administrative detention without counsel. The record shows numerous instances where one or more of appellants requested and was denied the assistance of counsel. And, lastly, the record compels the conclusion that each appellant was held in ADU at least in part as a result of pending criminal charges. The district court in the *Mills* case found that pre-trial detention was the *only* reason for the Mills' defendants prolonged stay in ADU. And the record shows that the *Gouveia* defendants were subject to a continuing FBI investigation throughout their stay in detention. Since appellants were held in detention for more than ninety days and one of the reasons for detention was to isolate appellants pending a criminal investigation and trial, they should have been appointed counsel.

## IV.

## THE PROPER REMEDY IS TO DISMISS THE INDICTMENTS

■ In fashioning an appropriate remedy for appellants we are guided by the Supreme Court's recent decision in *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.Ed.2d 564 (1981). There the Court stated that the remedy for Sixth Amendment deprivations "should be tailored to the injury suffered . . . and should not unnecessarily infringe on competing interest." *Id.* at 364, 101 S.Ct. at 668. The correct approach is to identify the taint and devise a remedy that neutralizes the prejudice suffered so that the defendant is assured the effective assistance of counsel and a fair trial. *Id.* at 365, 101 S.Ct. at 668.

■ The "taint" in the present case is that lengthy preindictment isolation without the assistance of counsel handicapped appellants' ability to defend themselves at trial. Prison crimes present suspects with unique investigatory and evidentiary obstacles. And, to repeat, the passage of time greatly exacerbates these difficulties. The length of delay in appointing counsel for appellants who were likewise denied the opportunity to take measures to preserve their own defense means that the critical initial stage of investigation was forever lost to appellants.

The district court in dismissing the indictments against appellants Mills and Pierce accurately characterized the prejudice suffered.

Specifically, defendants have been prejudiced by the dimming of memories of witnesses who could have substantiated their alibi; by the irrevocable loss of inmate witnesses known to the defendants only by prison 'nicknames' now long-since transferred to other institutions or released from custody altogether; and by the deterioration of physical evidence essential to corroborate the defendants' tes-

timony and to rebut the evidence against them.

Mills' Excerpt of Record at 188. As the Supreme Court has put it, we must be "responsive to proved claims that governmental conduct has rendered counsel's assistance to the defendant ineffective." *United States v. Morrison,* 449 U.S. at 364, 101 S.Ct. at 667. The district court was correct when it held that due to the belated appointment of counsel, ranging from 8 to 20 months after the murders were committed, and the transitory nature of the prison population, the opportunity for counsel to prepare the defense that is constitutionally guaranteed all persons accused of crime did not exist.

This case then is qualitatively different from the right to counsel cases in which the question is the right to counsel's presence at a pretrial confrontation between government and accused. When, for example, the government subjects a suspect to a custodial interrogation or a post-indictment lineup without the presence of counsel the prejudice suffered is both specific and curable. Suppression of the confession or evidence that is obtained or derived from the prohibited confrontation protects the right. *E.g., United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Cahill v. Rushen,* 678 F.2d 791 (9th Cir.1982). Here, however, government conduct has rendered counsel's assistance to appellants ineffective and the resulting harm is not capable of after the fact remedy. With respect to remedies appellants are in a position similar to suspects who are denied a speedy trial. *See Strunk v. United States,* 412 U.S. 434, 439, 93 S.Ct. 2260, 2263, 37 L.Ed.2d 56 (1973); *Barker v. Wingo,* 407 U.S. 514, 522, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972). Here, as there, the only certain remedy is to dismiss the indictments against them.

The government strenuously argues that appellants must demonstrate that they were prejudiced and that they have failed to present convincing evidence of specific prejudice. Even if this were true, it should not be dispositive. We, of course, do require definite, nonspeculative proof of actual prejudice before finding a due process violation from preindictment delay. *See United States v. Stone,* 633 F.2d 1272, 1274 (9th Cir.1979); *United States v. Swacker,* 628 F.2d 1250, 1254 (9th Cir.1980). The situation in these cases, however, is fundamentally different. Those accused in these cases were not free men as are usually those who complain about preindictment delay. They were not even a part of the general population of the prison. They were isolated in administrative detention. Under these circumstances we presume prejudice because ordinarily it will be impossible adequately either to prove or refute its existence. We must tip the scales in favor of the locked-away accused in order to provide substance to the Sixth Amendment right to counsel. Dismissal of the indictments is appropriate where denial of assistance of counsel creates the potential of substantial prejudice. *See United States v. Morrison,* 449 U.S. at 365, 101 S.Ct. at 668; *Coleman v. Alabama,* 399 U.S. 1, 7, 90 S.Ct. 1999, 2002, 26 L.Ed.2d 387 (1970); *White v. Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); *Hamilton v. Alabama,* 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).

Even without the presumption there is evidence that "substantial prejudice" may have occurred in the instant case. Each appellant asserts the loss of critical alibi witnesses either by their death, or by the transfer or release of witnesses known to appellants only by their nicknames. Moreover, it is significant that the government is unable to rebut convincingly appellants' showing of potential prejudice. In essence the government argues that since appellants were able to produce a large number of "alibi" witnesses then no prejudice could have occurred. This contention is flawed for at least two reasons. First, it assumes that the quantity of witnesses always can overcome the absence of any particular defense witness. This is not true. Second, it ignores other prejudicial factors such as the dimming memories of witnesses whose testimony the defense had no opportunity to record at a time when events were fresh and the deterioration of physical evidence.

We do not preclude the possibility that under circumstances not presently foreseeable the government will be able to rebut convincingly the presumption of prejudice. But it has not done so here. The record convinces us that preindictment isolation without the assistance of counsel unconstitutionally obstructed the ability of appellants to defend themselves at trial. Thus we must overturn the convictions entered against each appellant.

Accordingly, we reverse the judgments of the courts below and remand with instructions to dismiss the indictments.

REVERSED and REMANDED.

WRIGHT, Circuit Judge, dissenting, joined by CHOY, KENNEDY, ANDERSON and POOLE, Circuit Judges.

I respectfully dissent. Although I adhere to my position in *United States v. Mills,* 641 F.2d 785 (9th Cir.1981), the majority's unprecedented expansion of the right to counsel requires that I comment further.

The Supreme Court has spoken with a clear and consistent voice regarding the point at which the right to counsel attaches. It attaches when adversary judicial criminal proceedings are initiated. *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972). By contrast, the speedy trial right may attach at other times, depending on threats to the liberty interests it protects. *United States v. Marion,* 404 U.S. 307, 320–321, 92 S.Ct. 455, 463–464, 30 L.Ed.2d 468 (1971).

The majority today has confused these distinct Sixth Amendment guarantees. Relying on a *de facto* accusation concept derived from *Marion,* it rules that a prisoner stands accused if he is subjected to prolonged administrative detention pending investigation of a prison crime. Although *Marion* concerned the speedy trial right, the majority concludes that the right to counsel attaches when an inmate is so detained, though formal proceedings have not begun.

The reasons for the majority's intertwining of these different Sixth Amendment rights are obvious. In *United States v.*

*Clardy,* 540 F.2d 439, 441 (9th Cir.), *cert. denied,* 429 U.S. 963, 97 S.Ct. 391, 50 L.Ed.2d 331 (1976), we ruled that administrative detention did not bear the characteristics of a *de facto* arrest outside prison walls, and we refused to extend the speedy trial right to prisoners detained pending investigation of prison crimes.

Because *Clardy* forecloses a ruling that the speedy trial right applies to appellants, the majority has focused instead on the right to counsel. It insists that the assistance of counsel is necessary to combat the unique investigatory disadvantages faced by those in administrative detention. It points out that these appellants were powerless to interview witnesses or otherwise combat the "corrosive effects" of the passage of time while the government investigated.

The majority's focus on appellants' inability to interview witnesses underscores its misperception of the role played by the right to counsel. In *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), the Court noted the historic expansion of the right to counsel. It ruled, however, that the right applied to trial-like confrontations and not to the prosecutor's investigations or interviews with witnesses. *Id.* at 312–320, 93 S.Ct. at 2575–2579.

As the Court noted in *Kirby,* the right to counsel protects the defendant once he faces the prosecutorial forces of society and becomes immersed in the intricacies of the law. 406 U.S. at 689, 92 S.Ct. at 1882. Appellants may have suffered restrictions on their liberties and may have been isolated from the government's investigations. Until indicted, however, they faced no confrontations for which the right to counsel was designed.

Just as the majority's interpretation of the right to counsel does not conform to precedent, its emphasis on the appellants' investigatory disadvantages does not conform to reality. I can readily envision situations in which suspects face similar obstacles. One convicted and imprisoned for a single crime may be under continuing investigation for other offenses. Another may

have probation or parole revoked for renewed criminal activity. The government may incarcerate these suspects while it investigates criminal activities outside prison, for which they have not been arraigned or indicted. They are equally as "powerless" as appellants to interview witnesses or otherwise mitigate the effects of the passage of time.

Even free suspects often lack the investigatory advantages the majority attributes to them. Many law enforcement investigations are confidential and continue for months or years. Like appellants, the targets in such cases have limited knowledge or none about the investigations.

In any of these situations, indigent suspects might benefit from the assistance of counsel before indictment. As the Court noted in Ash, abuse or subversion of an investigation may occur at any point, but the extraordinary safeguard of the right to counsel is unnecessary to protect against such abuse. Suspects are amply protected by the "ethical responsibility" of the prosecutor and due process standards. United States v. Ash, 413 U.S. at 320–321, 93 S.Ct. at 2578–2579.

The Court's rulings on administrative detention cannot buttress the majority's departure from the accepted view of the right to counsel. Although the majority suggests that prosecutorial confrontations began at appellants' prison disciplinary hearings, the Court has ruled that such hearings do not implicate the right to counsel. Wolff v. McDonnell, 418 U.S. 539, 570, 94 S.Ct. 2963, 2981, 41 L.Ed.2d 935 (1974).

The majority's reliance on the Court's recent decision in Hewitt v. Helms, —— U.S. ——, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), is misplaced. There the Court recognized that strong governmental interests supported the isolation of suspects in prison crimes. It pointed out that the decision to isolate suspects was peculiarly within the expertise of prison officials and might be necessary to protect witnesses during investigations. Id. 103 S.Ct. at 872–873. Although the Court ruled that state regulations could create a liberty interest in re-

maining in the general prison population, it decided that prisoners did not need the right to counsel to protect that interest. Id. 103 S.Ct. at 871, 874.

Hewitt reaffirmed the notion that lawful incarceration of criminals is likely to restrict rather than expand their constitutional liberties. By its decision today, the majority has given suspects in prison crimes a right to counsel during government investigations, a right not available to suspects outside of prison. Rather than limiting the rights of prisoners, the majority has expanded them.

The inconsistencies in the majority's position are revealed further by its presumption of prejudice to appellants. The right to counsel is meant to ensure fairness in the adversary criminal process. United States v. Morrison, 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.Ed.2d 564 (1981). Even if we assume that appellants were improperly denied counsel at an earlier stage, we must ask: were they given a fair trial?

Rather than focus on this question, the majority presumes prejudice and dismisses the indictments. Any presumption of prejudice is unwarranted and conflicts with the Court's holding in Morrison. The Court there noted that even the total denial of counsel might not warrant the presumption of prejudice and the drastic remedy of indictment dismissal. Id. at 364–365, 101 S.Ct. at 667–668.

The appellants here were afforded defenses of uncommon quality and vigor. The Gouveia appellants alone presented 14 alibi witnesses. The majority's presumption of prejudice neglects the Court's teaching that the courts will dismiss indictments in response to claims that government conduct has rendered the assistance of counsel ineffective only if there is "demonstrable prejudice, or substantial threat thereof." Id. at 364–365, 101 S.Ct. at 667–668.

The majority then declares that the appellants have proved prejudice. To show the effects of detention on appellants' defenses, the majority notes the absence of witnesses, dimming of memories, and deterioration of physical evidence.

These are factors commonly noted by those who complain of pre-indictment delay. They result from the passage of time rather than from ineffective advocacy. The applicable statutes of limitations and the Due Process Clause protect accused persons from the effects of any delay. *Marion,* 404 U.S. at 322–325, 92 S.Ct. at 464–466.

To the extent that appellants argue that the government interfered actively with their access to witnesses, they have adequate remedies without resorting to the right to counsel. On a showing that the government has deliberately procured the absence of a material witness favorable to the defense, the indictment can be dismissed. *United States v. Valenzuela-Bernal,* —— U.S. ——, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). On a showing that a witness peculiarly within the government's control has not been produced, the defendants may request a missing witness instruction. If given, the instruction allows the inference that the witness would have testified unfavorably to the prosecution. *See United States v. Bramble,* 680 F.2d 590 (9th Cir.1982).

Finally, the likelihood of exonerating testimony from absent witnesses is preeminently a factual matter for the jury's determination if the defendant chooses to advance the theory as part of his defense. Such contentions are legitimate parts of the defense case that guilt has not been proven beyond a reasonable doubt. All such defenses are fully adequate to meet the arguments presented by the appellants here without straining to grant relief by a new application of the right to counsel under the Sixth Amendment.

Appellants suffered no prejudice from the absence of counsel. By creating a right to counsel here, the majority has departed substantially from Supreme Court precedent. That departure compels me to suggest that review by that Court is indicated.

I would affirm the judgments.