**Kermit George HILLIARD, Petitioner-Appellant,**

v.

**James C. SPALDING, Superintendent, and Slade Gorton, Attorney General of the State of Washington, Respondents-Appellees.**

No. 82–3641.

United States Court of Appeals, Ninth Circuit.

Submitted May 9, 1983.*

Decided Nov. 8, 1983.

As Amended Dec. 1, 1983.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Circuit Rule 3(a).

Kermit George Hilliard, in pro. per.

Michael P. Lynch, Asst. Atty. Gen., Olympia, Wash., for respondents-appellees.

Before TANG, FERGUSON and BOOCHEVER, Circuit Judges.

FERGUSON, Circuit Judge:

Hilliard was tried and convicted in a Washington state court on charges of rape, kidnapping and sodomy. After exhausting his state remedies, he petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied the petition, and Hilliard brought this appeal, in which he raised eleven issues. Ten of his contentions are without merit; we treat them in a separate memorandum disposition issued today. However, Hilliard has raised a colorable claim that the government suppressed evidence relevant to the rape conviction in violation of his constitutional right to due process of law. Because the proper resolution of this claim depends on a factual determination, we reverse and remand to the district court for an evidentiary hearing.

FACTS:

The record shows that the rape for which Hilliard was convicted took place in July 1975. Immediately after the victim reported the crime to the Seattle police, she was taken to Harborview Hospital for a physical examination. There, a physician obtained a sample of fluids from her vaginal tract, which he placed on a glass slide. An examination of the sample revealed the presence of sperm in the victim's vaginal secretions. However, the record is silent as to the subsequent fate of the glass slide. It cannot be determined whether the hospital retained the sample or turned it over to the government, or whether the sample was ultimately destroyed.

Prior to trial, Hilliard's counsel made several discovery requests, including the following, "Defendant moves for discovery of

all evidence known to the State which may prove the defendant's innocence." The sperm sample was not among the items produced by the prosecution.

At trial, no testimony regarding the sperm sample was introduced other than a brief exchange between the prosecutor and the examining physician, in which the doctor described the procedure by which the sample was obtained. Hilliard invoked an alibi defense and was convicted of kidnapping, rape and sodomy. He was sentenced to life imprisonment in the Washington state penitentiary.

Hilliard contends that the prosecution suppressed material evidence in his case, i.e., the sperm sample, and thus deprived him of a fair trial.

DISCUSSION:

 It is well established that the constitution prohibits the prosecution from suppressing material evidence in a criminal case. The government's duty to disclose such evidence was first announced by the Supreme Court in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), which held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." This court subsequently expanded that notion, imposing a duty to disclose even if defense counsel failed to specifically request particular evidence. *United States v. Hibler,* 463 F.2d 455, 459 (9th Cir.1972). The test for reversal in that situation is whether "the government failed to disclose evidence which, in the context of this particular case, might have led the jury to entertain a reasonable doubt about [the defendant's] guilt." *Id.* at 460.

This view, which was Ninth Circuit law when Hilliard went to trial in 1975, was accepted by the Supreme Court in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). That case established the prevailing constitutional standard in cases where defense counsel makes only a general "Brady request" for evidence, or makes no request at all. Under *Agurs,*

evidence is "material," and reversal required, "if the omitted evidence creates a reasonable doubt that did not otherwise exist." 427 U.S. at 112, 96 S.Ct. at 2402.

From the record before us, it appears that Hilliard's counsel did not specifically request the prosecution to turn over a sperm sample taken from the victim. However, counsel did move for discovery "of all evidence known to the State which may prove the defendant's innocence." In determining whether Hilliard's due process rights were violated, the question therefore becomes, assuming that the government did suppress the sperm sample, was that sample "material evidence" of the kind which would raise a reasonable doubt that did not otherwise exist? We believe it was.

In a rape case, it is possible to test a sample of seminal fluid taken from the victim and compare it with samples of a defendant's saliva and blood. The results of such a test cannot positively identify a defendant as the perpetrator, but the test *can* conclusively exculpate an individual if the blood types do not match. This procedure is widely employed by law enforcement authorities, and has been accepted by a number of courts. *See, e.g., United States v. Kennedy,* 714 F.2d 968 (9th Cir. 1983); *Davis v. Pitchess,* 388 F.Supp. 105, 107–08 (C.D.Cal.1974), *aff'd,* 518 F.2d 141 (9th Cir.1974), *rev'd on other grounds,* 421 U.S. 482, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975); *Bowen v. Eyman,* 324 F.Supp. 339, 340 (D.Ariz.1970); *People v. Nation,* 26 Cal.3d 169, 604 P.2d 1051, 1054–55, 161 Cal. Rptr. 299 (1980); *State v. Bowen,* 104 Ariz. 138, 449 P.2d 603, 605, *cert. denied,* 396 U.S. 912, 90 S.Ct. 229, 24 L.Ed.2d 188 (1969); *People v. Kemp,* 55 Cal.2d 458, 359 P.2d 913, 924, 11 Cal.Rptr. 361, *cert. denied,* 368 U.S. 932, 82 S.Ct. 359, 7 L.Ed.2d 194 (1961); *see also* 65 Am.Jur.2d *Rape* § 61 (1972). The materiality of a sperm sample in a rape case thus goes well beyond the *Agurs* "reasonable doubt" requirement because it can be used to prove the defendant's innocence to a certainty.

Of course, the utility of a sperm sample to the defense necessarily depends on

whether or not the blood types match. Thus, if the sperm sample were still available for testing, it would be reasonable to require the defendant to make some showing that the evidence would indeed have been exculpatory. If the sample had come into government hands prior to trial and subsequently been destroyed, however, the government may not interfere with the accused's ability to present a defense by imposing on him a requirement which the government's own actions have rendered impossible to fulfill.

We note that in some cases involving "what might loosely be called the area of constitutionally guaranteed access to evidence," *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3447, 73 L.Ed.2d 1193 (1982), the defendant is required to make some showing that the government's actions actually prejudiced his defense, even when those actions have rendered such a showing more difficult. The Supreme Court's recent decision in *Valenzuela-Bernal* is such a case. There, however, the actions were taken in furtherance of legitimate governmental interests, so that, on balance, it was not unreasonable to place a heavier burden on a defendant challenging them.

The *Valenzuela-Bernal* Court held that when the government deports illegal-alien witnesses before the defense has an opportunity to interview them, the compulsory process and due process clauses are not violated absent a showing that "the lost evidence would be both material and favorable to the defense." 102 S.Ct. at 3449. Although the removal of potentially favorable witnesses creates additional problems for the defense, the Court explicitly noted that the government's conduct must be viewed in light of the executive's concurrent duty to faithfully carry out the immigration laws, which requires prompt deportation of undocumented persons. 102 S.Ct. at 3444–45. We can discern no comparable government duty in cases such as the one before us now. The Court in *Valenzuela-Bernal* was also cognizant of the high costs the government incurs while detaining large numbers of alien witnesses. 102 S.Ct. at 3445–46. In contrast, the cost of preserving

sperm samples is insignificant—a slide can last over six years, without refrigeration, and still be tested with scientific certainty. *Davis v. Pitchess,* 388 F.Supp. at 107.

Finally, even though the government has a considerable interest in deporting aliens promptly, it cannot pursue that interest without making some effort to ensure that the accused is not denied his fundamental right to a fair trial. Thus, the *Valenzuela-Bernal* Court held that alien witnesses could be deported "upon the Executive's good-faith determination that they possess no evidence favorable to the defendant in a criminal prosecution." 102 S.Ct. at 3449. In the case before us, it appears that no such good-faith determination was made regarding the sperm sample. In cases where the government has arbitrarily suppressed a sperm sample without affording the defense an opportunity to test it, requiring a showing of prejudice before a defendant may assert his constitutional right to the evidence places his rights in the unsupervised hands of the prosecution.

■ We find Hilliard's situation to be more closely analogous to the cases in which no showing of prejudice is required. In those cases, government conduct, even though furthering a legitimate government interest, renders the defendant's burden of demonstrating prejudice extraordinarily difficult or impossible; in that situation the scales must be tipped in favor of the accused's right to a fair trial. This court's recent decision in *United States v. Gouveia,* 704 F.2d 1116 (9th Cir.1983) (*en banc*), provides an example. *Gouveia* was a pre-indictment delay case which held that prisoners suspected of committing crimes in prison who are placed in administrative detention for more than ninety days are entitled to counsel. Prisoners denied their right to counsel need not show that they were actually prejudiced in preparing their defense; rather, prejudice will be presumed. 704 F.2d at 1126. This court noted then that cases involving prisoners were "fundamentally different" from those involving free men, and wrote that "[u]nder those circumstances we presume prejudice because ordi-

narily it will be impossible adequately either to prove or refute its existence." *Id.* Similarly, where, as here, a defendant has not been permitted to test a sperm sample, it is impossible for him to prove that he was actually prejudiced by the government's conduct. We must therefore assume that he was so prejudiced.

CONCLUSION:

■ An individual's due process rights are violated if the government suppresses evidence which "was so important that its absence prevented the accused from receiving his constitutionally-guaranteed fair trial." *United States v. Hibler,* 463 F.2d 455, 459 (9th Cir.1972). The type of evidence in question here certainly meets that test. It can provide incontrovertible proof that the defendant is innocent of the heinous crime of rape and, as such, is "obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request." *United States v. Agurs,* 427 U.S. at 110, 96 S.Ct. at 2401.

■ Government suppression of this type of evidence, which deprives the defendant of what could be his only opportunity to conclusively prove his innocence, cannot withstand constitutional scrutiny. We therefore hold that in a case of this type, if a sperm sample is taken from the victim and the prosecution is in possession of or has control over the sample and is aware of its exculpatory nature, the prosecution is constitutionally required to disclose the existence of the sample and to make it available to the defense, even if defense counsel does not specifically request that the prosecution do so. This holding does not require the government to take a sample, or to independently test it. Nor does it require defense counsel to test the sample. It simply guarantees the defendant access to what could be conclusively exculpatory evidence, to utilize in whatever manner he deems appropriate.

In Hilliard's case it is unclear whether the prosecution ever asserted possession of or control over the sperm sample taken at Harborview Hospital. An evidentiary hearing is required to determine (1) whether the prosecution (a) knew that a sperm sample had been taken, (b) could be charged with the knowledge that the sample could be used to exculpate the defendant, (c) had control of the sperm sample, and (2) whether a demand for production by defense counsel upon knowledge of the slide's existence would have been successful in making the evidence available. Therefore, we remand to the district court so that such an evidentiary hearing may be held.

REMANDED for an evidentiary hearing.

BOOCHEVER, Circuit Judge, dissenting.

I have difficulty with the majority's conclusion that a remand is necessary in this case because the existence of the sperm slide was disclosed at trial. Dr. Silverstri testified that he examined the vagina for sperm and placed the material on a glass slide. Thus the defendant and his counsel were made aware that a sperm slide had been prepared. Nevertheless, counsel remained silent. He did not demand production of the slide for testing, nor did he request a continuance to review the slide and pursue further discovery.

There is no reversible error for failure to disclose when the information is furnished at trial. *See United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976) ("The rule of *Brady v. Maryland* . . . involves the discovery, *after trial,* of information which had been known to the prosecution but unknown to the defense.") (emphasis added); *United States v. Iverson,* 648 F.2d 737 (D.C.Cir.1981); *United States v. Craig,* 573 F.2d 455, 492 (7th Cir.1977) *cert. denied,* 439 U.S. 820, 99 S.Ct. 83, 58 L.Ed.2d 110 (1978).

The majority suggests that the sample may have been destroyed prior to Dr. Silverstri's testimony. If so, this fact was discoverable either by cross-examination, or by a prompt motion to produce. Defense counsel failed to undertake either.[1]

1. I do not mean to suggest here that defense counsel was incompetent. The magistrate states in his recommendation, "A review of the record indicates that petitioner was vigorously defended by counsel and counsel's actions clearly were at or beyond the level of reasonable competence."

A remand is unnecessary for any of the reasons proffered by the majority. It is clear from the existing record that both the prosecution and the defense had knowledge of the existence of the sperm sample from Dr. Silverstri's testimony of the existence of the sperm sample. Whether the prosecution is charged with the knowledge that the sample could be used to exculpate the defendant is irrelevant when the defendant knew of its existence at trial and could have reviewed the slide to determine whether in fact it would exculpate him. To remand for a determination of whether a demand by defense counsel for production of the slide would have been successful allows the defendant to have it both ways. If in fact a demand for production would have been futile (because of destruction of the slide), the defendant could have discovered that fact at trial.

A defendant should not be permitted to remain silent when informed of evidence that could conceivably be exculpatory, await the jury's verdict and then proceed to raise the issue by petition for writ of habeas corpus. *See United States v. Kubiak*, 704 F.2d 1545, 1552 (11th Cir.1983) (per curiam); *Evans v. United States*, 408 F.2d 369, 370 (7th Cir.1969).

Moreover, the defense made no showing that the evidence was potentially exculpatory. Apparently only eighty percent of the male population secrete blood in their semen. Hence, for twenty percent of the male population the test of semen to show blood type is not possible. *United States v. Kennedy*, 714 F.2d 968 at 971 (9th Cir.1983). Hilliard has made no showing that he has the secreter characteristic.

Principally because the sperm slide was made known to counsel and defendant at trial, I do not believe that failure to produce the slide can be made a ground for habeas relief.