James **BANKS** and Harold E. **Faulkner, Petitioners,**

v.

**FEDERAL AVIATION ADMINISTRA-TION and United States of America, Respondents.**

No. 82–4086
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Sept. 27, 1982.

---

Alan F. Zvolanek, Albuquerque, N. M., for petitioners.

William L. Johnson, Jr., Asst. U. S. Atty., Fort Worth, Tex., for respondents.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This case involves a final order of the Merit Systems Protection Board upholding the discharge of two United States Civil Service employees. They petitioned for review, pursuant to 5 U.S.C. § 7703. We reverse and remand.

In 1980, James Banks and Harold E. Faulkner (controllers) were Air Traffic Control Specialists at the Fort Worth Air Traffic Control Center. Their supervisor suspected them of drug usage, and they were asked in March, 1980 to submit to medical screenings. Banks and Faulkner complied with this request voluntarily and provided urine samples which they under-stood were to be tested for evidence of drug usage.

The test results were positive for cocaine usage as to both Banks and Faulkner. On or about May 16, 1980, they received notices of proposed separation from their jobs due to the use of a prohibited substance. On June 30, the controllers made written responses to the FAA challenging the notices. The agency responded on August 13 that the dismissals were considered proper, and on August 22, 1980, the separations became effective. The two controllers made timely appeals of their discharges to the Merit Systems Protection Board. At this time, the controllers' attorney requested production of the lab samples for independent inspection and testing. The request was denied because the FAA had allowed the proprietary laboratory which it had used to dispose of the samples. After the requisite hearings, both the regional official and the full board upheld the removals. Their decisions, we must assume, were controlled by the laboratory reports showing traces of cocaine usage in both Banks and Faulkner since there was no other evidence in the record indicating drug use by the controllers.

The controllers then filed a timely petition for review before this Court. They claim a denial of due process based on their inability to have the critical laboratory samples evaluated. They claim that the government's failure to preserve the samples, which blocked their discovery proceedings, invalidated the fundamental fairness of the administrative hearings. We find that the government failed in its obligation to take reasonable steps to preserve the samples, reverse the order of the Merit Systems Protection Board, and remand.

I. Requirement of Due Process in Administrative Proceedings

■ "The scope of review in administrative discharge cases is properly limited to a determination whether, from the record of Civil Service proceedings, it can be said that the required standard of procedural due

process was violated...." *Turner v. Campbell*, 581 F.2d 547, 548 (5th Cir. 1978). The standard does not, however, automatically demand reversal for all deviations from established or acceptable procedures. Minor infractions, such as failing to make available a copy of the case record, have been found not to be sufficient in this Circuit to invalidate a civil service termination. *Dozier v. United States*, 473 F.2d 866, 868 (5th Cir. 1973).

There can be no doubt in this case that it was crucial to Banks and Faulkner to have had their laboratory samples available for independent testing. Both employees denied any use of drugs. They contend that it is illogical to believe they would have submitted voluntarily to a drug screen if they had been taking drugs. The record shows no criminal charges and that the supervisor's suspicions were highly speculative at best. The only persuasive evidence of drug usage was the laboratory tests. Under these circumstances the controllers insist that due to the importance of the test results, the urine samples should have been preserved and made available in discovery proceedings.

The government contends that alternative avenues were available to challenge the accuracy of the laboratory results. Specifically, the director of the independent testing laboratory was available for cross-examination. The general testing methods were described and open to challenge. The non-availability of the samples for independent testing, according to the FAA, was not a serious shortcoming and does not violate due process guarantees. We cannot agree with such a casual treatment of the procedural rights of governmental employees.

This Court has earlier faced a destruction of drug-related laboratory evidence. In *United States v. Gordon*, 580 F.2d 827 (5th Cir. 1978), *cert. denied*, 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978), defendants were charged with criminal conspiracy to manufacture methaqualone, a controlled substance. Government agents seized samples of three chemicals found in the defendants' warehouse, and government chemists

were able to manufacture methaqualone from the samples. The chemists, however, destroyed the methaqualone they had made. Although the defendants were given samples of the raw materials, from which they were unable to produce methaqualone, they were not given a sample of the government-produced drug, for it had been destroyed. This Court found the government's synthesized methaqualone to be "clearly discoverable," *id.* at 836, yet found it "equally clear that the destruction of the controlled substance was done in good faith, not for the purpose of inflicting a disadvantage upon the defendants," *id.* at 837. At that time, we stated:

> The crucial issue, then, is whether the lack of the experimentally produced methaqualone requires reversal because it would have been "likely to have changed the verdict", *Armstrong v. Collier*, [536 F.2d 72, 77 (5th Cir. 1976)]. . . . An important factor ... is whether the evidence was "crucial to a determination of the guilt or innocence of the accused", *United States v. Hildebrand*, [506 F.2d 406 (5th Cir. 1975), *cert. denied*, 421 U.S. 968, 95 S.Ct. 1961, 44 L.Ed.2d 457 (1975)].

*Id.*

In *Gordon*, we found that producing the sample would not have changed the verdict, since Gordon was convicted of conspiracy, not of actual manufacturing. Yet the principles encountered in *Gordon*, a criminal proceeding, point toward the importance of the laboratory samples in the administrative case before us. The laboratory tests here were the *only* meaningful evidence resulting in the discharges. The accuracy of those tests, including the possibility that the samples were mixed-up, damaged, or even inaccurately tested, was the likely determinant of the entire case. Indeed, challenging the laboratory reports was probably the only way the controllers could succeed in their appeal.

The opportunity to cross-examine the laboratory director falls far short of substituting for the samples themselves. He obviously would be a highly antagonistic witness in any challenge of the laboratory re-

sults. But, as Davis states in his Administrative Law Treatise, 2d ed., § 12:1: "A party whose interest is protected by due process is entitled to opportunity for a trial-type hearing on disputed adjudicative facts, *except when inspection or testing is deemed a better method for finding the disputed facts....*" *Id.* at 406 (emphasis added). The reliance here was upon a laboratory test. A laboratory challenge of that test was its only effective counter.

The Board itself has recognized the importance of protecting an employee's due process rights during dismissal proceedings.[1] In *Bize v. Department of the Treasury*, 3 M.S.P.B. 261 (1980), the Board faced a thirty-day suspension of an IRS employee who failed to safeguard his pocket commission and enforcement badge. The Board found that the evidence denied appellant in this case (the investigative report) was central to his defense. In ordering discovery, the Board noted:

> Since one of the main functions of the Board is the adjudication of cases within its jurisdiction, 5 U.S.C. [§] 1205, the fairness of such adjudications can only be enhanced by disclosure of the facts in a case. Therefore, uncertainty as to the relevancy of requested evidence should be resolved in the favor of the movant, absent any undue delay or hardship caused by such request.

*Id.* at 266. In the case of *McGowan v. International Communication Agency*, 3 M.S.P.B. 198 (1980), the Board reviewed a proposed firing due to insubordination. The Board again noted:

> It is well settled that due process should be utilized to protect a public employee's interest in his employment.... Although administrative agencies such as

the Board are not bound by the same details of procedure as the courts, they are governed by the same basic requirements of fairness and notice....

*Id.* at 200.

Despite the importance of maintaining the laboratory samples, the FAA failed to preserve them. The agency undertakes to excuse this neglect by pointing out that it was a private, and not a governmental, laboratory performing the tests. The FAA contends that since it was not in possession of the samples, it was under no duty to preserve or order the control of the samples. This does not excuse the shortcoming. The record shows that such samples can be preserved safely for years, at minimal cost. There is also evidence in the record showing that other laboratories maintain their samples routinely for long periods of time if there is a possibility of later legal inquiry. Because of the importance these samples foreseeably held in the construction of an able defense, the FAA had a duty adequately to insure the preservation of the samples for the defendants' independent examination if the agency intended to rely upon them. The FAA failed in that duty. *See U. S. v. Bryant*, 439 F.2d 642 (D.C.Cir.1971) (federal narcotics undercover agent had an affirmative duty to protect tape recordings of conversations shown to be "highly relevant" to the defense).

■ Production of documents and other materials in separation proceedings is stressed, in part, in 5 C.F.R. § 752.404(b), issued pursuant to 5 U.S.C. § 7513(b). The section states:

> (b) *Notice of proposed action.* (1) The notice of proposal shall inform the employee of his or her right to review the material which is relied on to support the reasons for action given in the notice.

---

1. The Board's discovery rules, 5 C.F.R. § 1201.-71 *et seq.* (1982), provide in part:

   Section 1201.75

   Rules Governing Discovery Procedures.

   Because discovery in matters before the Board is intended to be of a simplified nature, procedures are not set forth in great detail but shall be established by the presiding official as appropriate under the circumstances. Section 1201.71 provides:

   > It is the intent of the Board that all proceedings will be conducted as expeditiously as possible with due regard to the rights of the parties. With regard to discovery, these two considerations require that a careful balance be established between avoiding unproductive delay in adjudication and obtaining that information essential to perfect the record. Accordingly, the discretion of the presiding official must be carefully exercised in determining the necessity for discovery.

The agency may not use material which cannot be disclosed to the employee or his or her ... physician....

Although in the instant case the laboratory results themselves were disclosed, we find that the administrative procedures applicable to this case required that the samples themselves be made available to the controllers. We hold that due process required an opportunity by the controllers to test on their own behalf to evaluate the accuracy of the government-sponsored tests.

## II.  Alternatives to Production

■  Our determination that the controllers were entitled to their voluntarily-submitted samples for independent testing does not dispose of our review, however. The samples are already destroyed, and an order compelling production would be to no effect. The next issue to resolve must then be whether it was proper under these circumstances for the Board to permit the introduction of the FAA's tests into evidence. We conclude that it was not.

The major factor in this determination is the importance of the evidence in question. Certainly there are cases, even under the stricter discovery rules of the criminal law, *e.g.* 18 U.S.C. § 3500; F.R.Crim.P. 16(a), where an inability to inspect will not negate the government's evidence. For example, in *Gordon, supra,* we found that the destruction of the methaqualone sample was improper, but we did not compel reversal of the conviction. The fact that the seized chemicals could be made into a controlled substance was not the core of the case, since Gordon was on trial for *conspiracy* to manufacture, not for manufacturing per se. He could have been found guilty of conspiracy even if he had been mistaken in his belief that his chemicals could produce the controlled substance. *See also United States v. Salazar,* 485 F.2d 1272 (2d Cir. 1973), *cert. denied,* 415 U.S. 985, 94 S.Ct. 1579, 39 L.Ed.2d 882 (1974) (production not compelled for heroin seized from defendant's drug courier where heroin seized from defendant seller was made available for inspection).

In the instant case, by contrast, the presence or absence of cocaine in the samples alone determined the ultimate issue. The results of the laboratory tests were the only credible evidence supporting the FAA's charges. While it may be difficult to mark an exact balance between relevance and the attendant procedural burdens in an administrative proceeding, even the most rudimentary standards of due process require here that the claimants have access to the solitary piece of incriminating evidence. Perhaps, the government's failure to preserve and produce such relevant and material evidence might be excusable upon a showing of good faith and reasonable effort. But the FAA's procedures show no attempt to preserve this evidence. The resulting denial of opportunity to Banks and Faulkner to prepare a credible defense requires us to hold that the results of the test be suppressed.

## III.  Effect of Suppression

■  Our final inquiry here is to examine alternative grounds to support the Board's findings. In civil service separation proceedings, there are often alternative methods of showing the propriety of the separation. For example, wrongdoing may be shown through a previous criminal conviction, *United States v. Augenblick,* 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969); *McDowell v. Goldschmidt,* 498 F.Supp. 598 (D.Conn.1980) (dismissal of air controller for marihuana possession upheld on evidence of criminal conviction). And "[e]ven where a legal finding of guilt on the charge could not be supported, an administrative dismissal based on substantial evidence of wrongdoing may not be considered arbitrary and capricious." *Turner v. Campbell, supra* at 549 (citation omitted). However, in the instant case there was no record of drug-related offenses. Without a properly admissible drug screen, and without the opportunity to challenge that laboratory report, the record is devoid of any credible evidence supporting the dismissals. The decision of the Merit Systems Protection Board must be reversed.

We are ill-equipped to decide whether new hearings could be productive in this proceeding, or whether the appellants must be made whole without further hearings.

We leave this to the administrative agency. *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 524–25, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978); *Presbyterian Hospital of Dallas v. Harris,* 638 F.2d 1381, 1389 (5th Cir. 1981), *cert. denied,* 454 U.S. 940, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981).

We note, however, that the position of Air Traffic Controller entails peculiarly important duties and that the safety of air traffic depends on the proper discharge of the controller's duties. Moreover we note that there was suspicion that these employees were engaged in drug usage and that, while the test results are inadmissible in evidence, they cannot be totally disregarded as furnishing a basis for suspicion. Therefore, nothing in this opinion shall preclude the institution of a reasonable program for testing these employees to assure that they are and remain drug free for a reasonable period of time, until the possibility of suspicion has been removed and they can be treated just like all other air traffic controllers. Such program, if instituted, shall attempt to protect the privacy of the employees.

The case is remanded to the Merit Systems Protection Board for proceedings consistent with this opinion.

REVERSED AND REMANDED.