**UNITED STATES**

v.

**Airman Jimmy E. FROST, Jr., FR 429–27–9257 United States Air Force.**

**ACM S26386.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 15 March 1984.

Decided 12 Sept. 1984.

Appellate Counsel for the Accused: Colonel Leo L. Sergi, Major William H. Lamb and Major Francis T. Lacey, USAFR. Captain Rory L. Rank filed a brief on behalf of the accused.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Captain Kevin L. Daugherty.

Before HODGSON, FORAY and MURDOCK, Appellate Military Judges.

## DECISION

MURDOCK, Judge:

Appellant was found guilty, contrary to his pleas, of marijuana possession by a judge alone special court-martial. He was sentenced to a bad conduct discharge, confinement at hard labor for one month, forfeiture of $200, and reduction to airman basic. Defense has asserted seven errors. We will discuss those warranting our attention.

### I

The evidence in this case is based on a urinalysis of the accused which was positive for marijuana. The sample was obtained as part of a unit sweep of the transition flight to which the accused was assigned. The sample was tested and retested at the laboratory at Brooks Air Force Base, and retested at government request at the Center for Human Toxicology at the University of Utah (Center). At an appropriate time during the development of this case, defense counsel made a request for a portion of the urine sample so it could be tested at a laboratory of the accused's choosing. About this time the government conducted its first retest of the sample by submitting it for gas chromatograph mass spectrograph testing at Brooks Air Force Base. Lab personnel withdrew a small quantity of the total sample and took it to the proper lab for this test. Sometime before the remainder of that small portion was returned for safekeeping, all of the "parent" sample was inadvertently destroyed. This left a total of less than five milliliters available for further testing. Part of this remainder was sent to the Center for retesting. Another part was sent to the laboratory which the accused had selected in Albuquerque, New Mexico. The director of the Albuquerque lab notified defense counsel that only 30 to 40 microliters of urine had been received and that was an insufficient quantity to perform the desired tests.

The appellant now asserts that the results of the urine tests should have been suppressed because the defense was not able to perform an independent test of the urine sample. The defense counsel relies on the reasoning in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and several cases including *Banks v. Federal Aviation Authority,* 687 F.2d 92 (5th Cir.1982).[1] In *Banks* the court held that it violated the due process rights of two air traffic controllers to be fired for drug use based on single urine tests that the controllers had been unable to retest. The United States Supreme Court recently struggled with "what might loosely be called the area of constitutionally guaranteed access to evidence" in *California v. Trombetta,* — U.S. —, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). *Trombetta* involved breath tests for alcohol. The Court held that the item of evidence to be introduced and dealt with at court was the test result, not the breath sample. They held that the rights of the accused are adequately protected when there is a chance to attack the reliability of the test procedure and to cross-examine testing personnel. In the present case both of these opportunities were available, and personnel from both

---

1. *Hilliard v. Spalding,* 719 F.2d 1443 (9th Cir.1983); *People v. Gomez,* 198 Colo. 105, 596 P.2d 1192 (1979); *State v. Lovato,* 94 N.M. 780, 617 P.2d 169 (Ct.App.1980).

Brooks Air Force Base and the Center were examined and cross-examined extensively. This adequately protected the accused's rights and we find no error in admitting the test results.

■■■ The defense also objected to admitting the results of the lab test because they claimed the chain of custody had been broken. They contend that about four milliliters of urine left the Brooks lab and the director of the Center testified that they received about one milliliter for testing. At trial it was established that the four milliliter amount was a "scientific estimation" by the Brooks lab officer of how much urine he returned to safekeeping after the retest. (He estimated because the container was not graduated below five milliliters.) Later, as mentioned above, part of this remainder was sent to the Center and another small portion was sent to Albuquerque. It should be evident that all of a laboratory sample does not need to be shipped everywhere in order to keep the chain of custody intact. What is required is that "the court ... be satisfied that in reasonable probability the article had not changed in important respects." *United States v. Courts*, 9 M.J. 285 (C.M.A.1980). The trial court was satisfied that the chain of custody had not been broken. We see no reason to disagree.

## II

The specification in this case alleges that the accused "did, at some place in North America, from on or about 25 June 1983 to on or about 11 August 1983 wrongfully use marijuana." Defense objected, at trial and on appeal, to this specification asserting that it was overbroad. Further, they as-

sert that the government failed to establish jurisdiction because they did not prove that the accused had exhibited any psychological effects of the alleged drug use. Trial counsel explained the words "North America" were used to include drug use in Mexico because Holloman Air Force Base is about 75 miles from the border and "Air Force personnel frequently visit it on nonduty days."

■■■ National borders do not limit the operation of the Uniform Code of Military Justice. U.C.M.J., Art. 5, 10 U.S.C. 805; *see also United States v. Newvine*, 48 C.M.R. 188 (A.F.C.M.R.1974). It is well established that almost any drug use by a servicemember is service connected. *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969); *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); *United States v. Trottier*, 9 M.J. 337 (C.M.A.1980); *Murray v. Haldeman*, 16 M.J. 74 (C.M.A.1983). In *Haldeman*, the Court of Military Appeals held that court-martial jurisdiction exists over servicemembers when they enter a military base "subject to any physiological *or* psychological effects of the drug." (emphasis added) In the present case the test was given on base and the results were positive for marijuana. That is sufficient physiological effect to establish jurisdiction.[2]

## III

■■■ Finally, defense asserted that the military judge erred by not allowing day for day credit for "illegal restriction" based on the time the accused was restricted to the base while he was assigned to the base transition flight.[3] We disagree.

2. Good pleading practice should result in precisely drawn specifications. Unfortunately, some offenses by their nature make it difficult to limit the location of the offense to a small area. For example, it is permissible to charge absence without leave by alleging absence from the Air Force. *United States v. Brown*, 24 C.M.R. 585 (A.F.C.M.R.1957) Drugs, because they are frequently used secretly and they can be used almost anywhere, would seem to require a certain latitude in alleging the location of their illegal use. Although we find the speci-

fication in this case to be legally correct, we urge restraint and discourage the use of such "shot gun" pleading.

3. This "unit" is part of the Combat Support Group and apparently acts as a holding area for servicemembers from all base units who are awaiting administrative discharge.

The loose practices revealed by this case should serve as a caution. The appellant's commander took steps to discharge him administratively in early June. One such step was to

512

Because of the accused's poor military record, which included two Article 15 punishments, his immediate commander decided to discharge him administratively. The accused was transferred to the base transition flight on 7 June 1983 and an administrative discharge action was initiated the next day. For some unexplained reason, the accused's commander restricted him to the base on 2 August 1983. No evidence was introduced to connect this restriction to the current charges. In fact, the restriction began nine days before the unit sweep was conducted and 21 days before the test results were known. The court properly held that this restriction was not related to the court martial charges and should not be considered for sentence credit.

The remaining assertions of error are without merit. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

HODGSON, Chief Judge, and FORAY, Senior Judge, concur.

transfer him to the transition flight on 8 June 1983. He was still there awaiting discharge when the test results became known 77 days later. Whatever their utility, transition units may subject commanders to criticism when their existence encourages commanders to ignore their responsibilities by allowing airmen who should be discharged expeditiously to languish in a transition unit.