# United States Court of Appeals for the Federal Circuit

—————————————

**JUSTIN GRIMSRUD,**
*Petitioner*

**v.**

**DEPARTMENT OF TRANSPORTATION,**
*Respondent*

—————————————

2017-1737

—————————————

Petition for review of the Merit Systems Protection Board in No. NY-0752-14-0340-I-1.

—————————————

## ON PETITION FOR PANEL REHEARING AND REHEARING EN BANC

—————————————

JOHN SILVERFIELD, Naples, FL, filed a petition for panel rehearing and rehearing en banc for petitioner.

DOMENIQUE GRACE KIRCHNER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, filed a response to the petition for respondent. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., ALLISON KIDD-MILLER.

—————————————

Before PROST, *Chief Judge*, NEWMAN, LOURIE, SCHALL,[1] DYK, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, CHEN, HUGHES, and STOLL, *Circuit Judges*.

LOURIE, *Circuit Judge*, with whom CHEN, *Circuit Judge*, joins, concurs in the denial of the petition for rehearing en banc.

NEWMAN, *Circuit Judge*, with whom WALLACH, *Circuit Judge*, joins, dissents from the denial of the petition for rehearing en banc.

WALLACH, *Circuit Judge*, dissents from the denial of the petition for rehearing en banc.

PER CURIAM.

# **O R D E R**

Petitioner Justin Grimsrud filed a petition for rehearing and rehearing en banc. A response to the petition was invited by the court and filed by respondent Department of Transportation. The petition was first referred as a petition for rehearing to the panel that heard the appeal, and thereafter the petition for rehearing en banc was referred to the circuit judges who are in regular active service. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

(1) The petition for panel rehearing is denied.

(2) The petition for rehearing en banc is denied.

(3) The mandate of the court will issue on September 7, 2018.

---

[1]    Circuit Judge Schall participated only in the decision on the petition for panel rehearing.

FOR THE COURT

 August 31, 2018            /s/ Peter R. Marksteiner
          Date                  Peter R. Marksteiner
                                   Clerk of Court

# United States Court of Appeals
# for the Federal Circuit

---

**JUSTIN GRIMSRUD,**
*Petitioner*

**v.**

**DEPARTMENT OF TRANSPORTATION,**
*Respondent*

---

2017-1737

---

Petition for review of the Merit Systems Protection Board in No. NY-0752-14-0340-I-1.

---

LOURIE, *Circuit Judge*, with whom CHEN, *Circuit Judge*, joins, concurring in the denial of the petition for rehearing en banc.

I concur in the decision of the court not to rehear this appeal *en banc*. The dissent suggests that we grant rehearing to determine whether the Department of Transportation ("DOT") violated Justin Grimsrud's due process rights by not producing an aliquot of his urine specimen to him for identity and cocaine testing. Consideration of that question in this case, however, does not meet the standard for *en banc* review because it is not "necessary to secure or maintain the uniformity of the court's decisions," and does not "involve[] a question of exceptional importance." Fed. R. App. P. 35(a).

Moreover, that Grimsrud did not raise this issue in the petition for rehearing underscores the lack of necessity of *en banc* review in this case. The full court need not reconsider an unraised issue that does not satisfy the standard for *en banc* review.

Grimsrud appealed from the Merit Systems Protection Board's ("MSPB") decision sustaining his removal as an Air Traffic Control Specialist following a positive drug test. Prior to the events at issue in this appeal, Grimsrud entered into an agency-approved and monitored Treatment and Rehabilitation Plan for alcohol abuse pursuant to which he was regularly screened for alcohol and drug use. In accordance with DOT Order 3910.1D and the Mandatory Guidelines for Federal Workplace Drug Testing Programs, 73 Fed. Reg. 71,858 (Nov. 25, 2008) ("HHS Mandatory Guidelines"), Grimsrud's urine was collected by a trained collector and split into two bottles (A and B). Following notification that Bottle A tested positive for cocaine, Grimsrud asked that Bottle B be tested. Bottle B was tested by a different independent laboratory and also tested positive. DOT removed Grimsrud based on the positive drug test results. On appeal to the MSPB, the AJ sustained his removal following a hearing. The AJ rejected his challenges based on alleged procedural errors in the specimen collection process, negative drug test results performed on specimens obtained at later dates, and his polygraph test for lack of credibility. That is the history of this case.

I respectfully disagree with the dissent's suggestion that our precedent, MSPB precedent, and the Fifth Circuit's decision in *Banks v. FAA*, 687 F.2d 92 (5th Cir. 1982), demonstrate Grimsrud's entitlement to additional testing of his urine specimen for drugs and DNA. We have never held that due process requires such testing. In sustaining the employee's removal in *Meza v. Department of Homeland Security*, 275 F. App'x 987 (Fed. Cir. 2008), we noted that the AJ had granted a motion to

compel the agency to provide an aliquot of the urine specimen for DNA testing, but the propriety or necessity of the AJ's grant of the motion was not passed on by the panel. In *Storm v. Department of Army*, while the MSPB recognized that "an agency's procedural error may constitute harmful error when it effectively destroys, or precludes an appellant from acquiring, the only available evidence by which he can show that the agency likely would have reached a different conclusion in the absence of its error," it did not find any such error had occurred. 64 M.S.P.R. 14 (1994) (citing *Banks*, 687 F.2d at 96). In *Ivery v. Department of Transportation*, 96 M.S.P.R. 119 (2004), the MSPB did not sustain the employee's removal where the agency failed to follow the prescribed split-specimen protocol. It is undisputed that the agency followed that protocol in Grimsrud's case. *Banks*, which was decided prior to the implementation of the split-specimen protocol, is factually distinguishable, and subsequent decisions demonstrate that no testing beyond that performed was required here.

Assuming *arguendo* that we should apply *Banks*, the DOT complied with its requirements in this case. In *Banks*, two air traffic controllers contested their removal based on a single positive drug test conducted by a private laboratory that had not preserved the samples for retesting. The Fifth Circuit held that "due process required an opportunity by the controllers to test on their own behalf to evaluate the accuracy of the government-sponsored tests." 687 F.2d at 96.

In contrast, Grimsrud's specimen was not destroyed, and he availed himself of the agency's procedure permitting additional drug testing of the specimen following a positive result. Grimsrud could have selected any HHS certified laboratory to perform the testing on Bottle B. *See* DOT Order 3910.1D, Chp. VII, ¶ 8 (J.A. 504) (permitting "an employee with a verified positive . . . test result" to "request[] that another HHS certified laboratory be

used, other than the laboratory under contract to DOT for the purposes [of] split-specimen analysis" to test Bottle B). The parties stipulated that the laboratory personnel who tested Bottles A and B were qualified and followed proper procedures in testing and processing the specimen. J.A. 12–13. Thus, Grimsrud had "an opportunity . . . to test [the sample] on [his] own behalf to evaluate the accuracy of the government-sponsored tests." *Banks*, 687 F.2d at 96. Due process does not require unlimited testing, and *Banks* did not hold to the contrary.

Moreover, subsequent case law counsels against applying the reasoning in *Bank*s to find a due process violation here. In *California v. Trombetta*, the Supreme Court held that due process "does not require that law enforcement agencies preserve breath samples in order to introduce the results of breath-analysis tests at trial" to prove the defendant was driving while intoxicated. 467 U.S. 479, 491 (1984). The Court explained that "[e]ven if one were to assume that the Intoxilyzer results in this case were inaccurate and that breath samples might therefore have been exculpatory, it does not follow that respondents were without alternative means of demonstrating their innocence." *Id.* at 490.

Similarly, Grimsrud had "alternative means of demonstrating [his] innocence." *Id.* He took advantage of those means by presenting evidence and cross-examining witnesses at the MSPB hearing, including challenging the chain of custody in an attempt to raise doubt as to whether the specimen was his and "attempt[ing] to raise doubts in the mind of the factfinder whether the test was properly administered." *Id.*; *see also Trevino v. Dahm*, 2 F.3d 829, 832 (8th Cir. 1993) ("As long as the defendant has an adequate opportunity to impeach the reliability of a scientific test, and the qualifications of the person administering the test, due process is not implicated by a state's good faith failure to preserve a sample for independent testing."); *United States v. Boyd*, 961 F.2d 434, 437 (3d

Cir. 1992) (holding no due process violation based on routine destruction of urine specimen prior to defendant's ability to independently test it where defendant "had other means by which to challenge the evidence"). The AJ's rejection of Grimsrud's fact-specific challenges and credibility determinations are not an appropriate subject for *en banc* review.

Due process also does not require the agency to make Grimsrud's specimen available for DNA testing. The relevant regulations, HHS Mandatory Guidelines, and DOT drug testing procedures make clear that DNA testing of DOT urine specimens is not permitted. 49 C.F.R. § 40.13(c) ("[A] laboratory is prohibited from making a DOT urine specimen available for a DNA test or other types of specimen identity testing."); Procedures for Transportation Workplace Drug and Alcohol Testing Programs, 65 Fed. Reg. 79,462, 79,484 (Dec. 19, 2000) ("[T]he rule forbids laboratories and other parties from making a DOT specimen available for DNA testing."); HHS Mandatory Guidelines, 73 Fed. Reg. at 71,861 (explaining that the guidelines "prohibit DNA testing on a specimen"); *see also Swaters v. Dep't of Transp.*, 826 F.3d 507, 512 (D.C. Cir. 2016) ("The meaning of § 40.13(c) is clear on its face: 'a laboratory is prohibited from making a DOT urine specimen available for a DNA test or other types of specimen identity testing.'").

DOT's rationale for not allowing DNA testing is reasonable. DOT has "two main reasons" for this policy: (1) "a properly completed chain of custody conclusively establishes the identity of a specimen"; and (2) "the only thing a DNA test can do is to determine, to a high level of probability, whether a specimen and a reference specimen were produced by the same individual." Procedures for Transportation Workplace Drug and Alcohol Testing Programs, 65 Fed. Reg. at 79,484. As the D.C. Circuit explained:

> even if a DNA test were conclusively to prove the positive sample does not belong to [employee], the DoT could not determine whether the mismatch was due to an error in handling or to the tested employee's substitution of someone else's urine in the original sample, the reference sample, or both. Because a properly preserved chain of custody renders the first possibility very unlikely, and the second possibility would arise only if a guilty employee was trying to defeat the test, the DoT quite reasonably—in view of the risk to airline safety— wants to avoid reinstating a pilot's license on the basis of a DNA mismatch.

*Swaters*, 826 F.3d at 512.

The D.C. Circuit has thus upheld DOT's policy of denying the requests of employees who test positive for drugs to obtain the urine sample for DNA testing, including rejecting a due process challenge. *Id.* at 514; *cf. Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 72 (2009) (rejecting request to "recognize a freestanding right to DNA evidence"). The D.C. Circuit's analysis in *Swaters* is persuasive, especially in light of the Supreme Court's analysis in *Trombetta*.

The dissent asserts that this case involves a matter of exceptional importance. While certainly it does involve a matter of exceptional importance to Grimsrud, in the context of a court of appeals deciding whether to rehear a case *en banc* on an issue concerning how many times he is entitled to have his sample retested, and what means will be used to establish that the sample is his, it does not.

For the foregoing reasons, I concur in the decision of the court not to rehear this appeal *en banc*.

# United States Court of Appeals for the Federal Circuit

---

**JUSTIN GRIMSRUD,**
*Petitioner*

**v.**

**DEPARTMENT OF TRANSPORTATION,**
*Respondent*

---

2017-1737

---

Petition for review of the Merit Systems Protection Board in No. NY-0752-14-0340-I-1.

---

NEWMAN, *Circuit Judge*, with whom WALLACH, *Circuit Judge*, joins, dissenting from denial of the petition for rehearing *en banc*.

The court has declined to rehear this case, although it endorses a practice that violates due and fair process. Here the fired employee sought to confirm that an incriminating specimen of urine — the basis for his being fired — was indeed his urine. The agency refused to permit the test, but nonetheless implemented the penalty. I write because of the importance of administrative practices on whose fairness public employees can rely. The government's obligation of fair dealings with its employees is beyond compromise. Here the disregard of routine evidentiary process cannot be condoned.

Mr. Grimsrud failed a routine drug test. On learning that his urine tested positive for cocaine, Mr. Grimsrud stated that he never took cocaine. He promptly went to an independent laboratory (LabCorp) for blood, urine, and hair follicle tests for cocaine—all were negative. He passed a polygraph test asserting that he never took cocaine.

The DOT fired Mr. Grimsrud, relying solely on the positive urine test. Mr. Grimsrud requested an aliquot of the sample for retesting. The DOT responded: "The Agency is not in possession of the specimen samples. Upon information and belief, the specimen samples no longer exist." J.A.1288 (DOT's Response to Discovery, Oct. 6, 2014). Mr. Grimsrud then moved the MSPB to suppress evidence for spoliation. The DOT then told the MSPB that it "discovered, upon further investigation, that the specimens do still exist at the laboratories, in storage,"[1] J.A.1434 ("Agency Response to Appellant's Motion to Dismiss/Suppress Evidence Based on Spoliation of Evidence," Oct. 30, 2014). The DOT then refused to produce the sample for retesting.

The DOT stated that Mr. Grimsrud is not entitled to retest the specimen, but is entitled only to the results of the tests conducted by the DOT. *See* "Agency Response to Appellant's Motion to Dismiss/Suppress Evidence Based on Spoliation of Evidence," Oct. 30, 2014. (J.A.1432) ("Pursuant to HHS Mandatory Guidelines, Appellant is not entitled to the specimen samples but is only entitled to records relating to the results of his drug tests which have been provided."). The DOT also stated that Mr. Grimsrud never filed a formal motion to compel; Mr. Grimsrud responded that he had relied on the agency's

---

[1] The DOT denied to the MSPB that it had told Grimsrud that the sample no longer existed—although this written statement is in the record.

prior response that the specimen samples no longer exist. The DOT also stated that the split specimen in Bottle B had been tested by an independent laboratory and that this was all that he was entitled to, pursuant to the HHS Mandatory Guidelines and 49 C.F.R. § 40.13. Mr. Grimsrud stated concern about the chain of custody, and argued that he should be allowed to have the sample tested to determine whether the urine specimen (and sole evidence supporting his firing) is actually his.

In its briefs, the DOT stresses issues such as Mr. Grimsrud's reported refusal of "rehabilitation." The DOT does not explain its refusal to permit re-testing of the specimen, other than to say that Grimsrud had no basis to challenge the chain of custody and no right to access the specimen for retesting.

The question is not whether the DOT can fire an employee who used drugs. The question is whether the DOT procedure, in refusing to permit retesting of the urine sample that was the basis for firing the employee, meets the fundamentals of due process. Precedent has well considered this aspect, and uniformly rejects the government's position. In *Banks v. F.A.A.*, 687 F.2d 92 (5th Cir. 1982), the court referred to "the most rudimentary standards of due process" when the test specimens were not preserved and there was no other evidence of drug use:

> In the instant case, by contrast, the presence or absence of cocaine in the samples alone determined the ultimate issue. The results of the laboratory tests were the only credible evidence supporting the FAA's charges. While it may be difficult to mark an exact balance between relevance and the attendant procedural burdens in an administrative proceeding, even the most rudimentary standards of due process require here that the claimants have access to the solitary piece of incriminating evidence. Perhaps, the

> government's failure to preserve and produce such relevant and material evidence might be excusable upon a showing of good faith and reasonable effort. But the FAA's procedures show no attempt to preserve this evidence. The resulting denial of opportunity to Banks and Faulkner to prepare a credible defense requires us to hold that the results of the test be suppressed.

*Id*. at 96.[2] Other rulings are in conformity.

The MSPB has held that it is harmful error for an agency to deny access to the only evidence by which an employee may clear his name. *See Ivery v. Dep't of Transp.*, No. DA-0752-02-0424-I-1, 2004 WL 1191655 (M.S.P.B. May 10, 2004), No. DA-0752-02-0424-C-1, 2006 WL 1724068 (M.S.P.B. June 22, 2006) ("However, an agency's procedural error may constitute harmful error when it effectively destroys, or precludes an appellant from acquiring, the only available evidence by which he can show that the agency likely would have reached a different conclusion in the absence of its error."); *Storm v. Dep't of Army*, No. AT-0752-93-0265-I-1, 1994 WL 501334 (M.S.P.B. Mar. 31, 1994) ("[A]n agency's procedural error may constitute harmful error when it effectively destroys, or precludes an appellant from acquiring, the only available evidence by which he can show that the agency likely would have reached a different conclusion in the absence of its error.").[3] In *Meza v. Department of Homeland*

---

[2]     My colleagues in concurrence state that the DOT complied with the *Banks* holding. Conc. Op. at 3. However, *Banks* "required that the samples themselves be made available to the controllers." 687 F.2d at 96. Here the DOT refused to make the sample available.

[3]     The concurrence is correct that the MSPB found no error in *Storm,* for there the agency gave the appellant access to the sample to conduct DNA testing, "but the

*Security*, 275 F. App'x 987, 990 (Fed. Cir. 2008), the Administrative Judge compelled DHS to provide Meza with an aliquot of a positive urine sample so that DNA testing and additional analyses could be performed.

The only basis for the charge of cocaine use is Mr. Grimsrud's urine sample. The DOT first denied the sample's existence, and then refused access upon discovering that the sample indeed existed. These responses cannot be justified, though my colleagues ratify this procedure. As stated in *Banks*, rudimentary standards of due process cannot be discarded by the federal employer.

The DOT regulations appear to set a curious standard. 49 C.F.R. § 40.13(e) states:

> (e) No one is permitted to change or disregard the results of DOT tests based on the results of non-DOT tests. For example, as an employer you must not disregard a verified positive DOT drug test result because the employee presents a negative test result from a blood or urine specimen collected by the employee's physician or a DNA test result purporting to question the identity of the DOT specimen.

The regulations also appear to prohibit verification of employee identity by DNA testing. Section 40.13(c) states:

---

appellant placed conditions upon the proposed DNA testing that the agency found unacceptable. The deciding official testified that, if the Armed Forces Institute of Pathology had performed a DNA test on the appellant's urine sample and the results of that test had indicated that the sample was not the appellant's, he would not have taken disciplinary action against the appellant." *Storm*, 1994 WL 501334, at *23–24 (internal citation and footnote omitted).

(c) [Employer Responsibilities]. You must not perform any tests on DOT urine or breath specimens other than those specifically authorized by this part or DOT agency regulations. For example, you may not test a DOT urine specimen for additional drugs, and a laboratory is prohibited from making a DOT urine specimen available for a DNA test or other types of specimen identity testing.

The record before us does not explain why "a laboratory is prohibited" from making a specimen available for "identity testing." I also note the restriction in 49 C.F.R. § 40.153(e):

(e) You [the medical review officer] must tell the employee that additional tests of the specimen (e.g., DNA tests) are not authorized.

Perhaps there is a role for limiting debate about drug testing, but fundamental rights cannot be limited. *See Reno v. Flores*, 507 U.S. 292, 301–02 (1993) ("Respondents' 'substantive due process' claim relies upon our line of cases which interprets the Fifth and Fourteenth Amendments' guarantee of 'due process of law' to include a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest."); *Stone v. F.D.I.C.*, 179 F.3d 1368, 1376 (Fed. Cir. 1999) ("Our system is premised on the procedural fairness at each stage of the removal proceedings. An employee is entitled to a certain amount of due process rights at each stage and, when these rights are undermined, the employee is entitled to relief regardless of the stage of the proceedings.").

Denying an employee a reasonable opportunity to establish that he was wrongfully charged, by denying access to the sole evidence on which the government acted,

raises major due process concerns. The Court has referred to "the area of constitutionally guaranteed access to evidence." *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867 (1982). Precedent is clear; *see, e.g., Brady v. Maryland*, 373 U.S. 83, 87 (1963) (when evidence is material to guilt or punishment, withholding such evidence violates due process); *California v. Trombetta*, 467 U.S. 479, 485 (1984) ("A defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed.");[4] *United States v. Agurs*, 427 U.S. 97 (1976)

---

[4]    The concurrence states that *Trombetta* supports the denial of access to the only evidence against Mr. Grimsrud. However, *Trombetta* leaves no doubt that there is a constitutional right to "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." 467 U.S. at 485. The Court stated that had respondents submitted to urine or blood tests, "the State automatically would have preserved urine and blood samples for retesting by respondents." *Id.* at 490 n.11. Contrary to the concurrence's suggestion, *Trombetta* does not support a rule that an agency may deny an employee access to the only incriminating evidence against him.

Similarly, *Trevino v. Dahm*, 2 F.3d 829 (8th Cir. 1993) does not support the withholding of access to evidence. *Trevino* relates to the "opportunity to impeach the reliability of a scientific test, and the qualifications of the person administering the test," *id.* at 832, issues not here raised. Nor are these issues raised in *United States v. Boyd*, 961 F.2d 434 (3d Cir. 1992), where the court held that the government did not exhibit bad faith when its independent laboratory destroyed the urine specimen pursuant to its standard procedure. *Id.* at 437. In Mr.

("[T]here are situations in which evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request."). This classic safeguard of due process is no less entrenched for civil proceedings having punitive consequences, such as loss of one's job.

By routine evidentiary practice, the DOT should have permitted Mr. Grimsrud to obtain a test of his urine specimen for his identity as well as for cocaine. To the extent the DOT regulations support withholding of this evidence, the regulations cannot be sustained. I cannot agree with my colleagues' position that this violation of due process "does not involve a question of exceptional importance." Conc. Op. at 1.

From the court's denial of rehearing to consider these issues, I respectfully dissent.

---

Grimsrud's case the DOT refused to produce the specimen, even after reporting that it was not destroyed.

# United States Court of Appeals
# for the Federal Circuit

---

**JUSTIN GRIMSRUD,**
*Petitioner*

**v.**

**DEPARTMENT OF TRANSPORTATION,**
*Respondent*

---

2017-1737

---

Petition for review of the Merit Systems Protection Board in No. NY-0752-14-0340-I-1.

---

WALLACH, *Circuit Judge*, dissenting from the denial of the petition for rehearing en banc.

I concur with Judge Newman's dissent in full. However, I dissent separately to add that the possibility of sample contamination simply has not been eliminated on this record. No agency is infallible, and to simply take their assurances with no other support in the record is a direct violation of Petitioner Justin Grimsrud's constitutional rights. *See* Leo Shane III, *Troop Drug Dismissals Suspended Due to Lab Contamination Concerns*, MILITARY TIMES (June 21, 2018), *available at* https://www.militarytimes.com/news/pentagon-congress/2018/06/21/defense-department-suspends-all-drug-dismissals-over-lab-contamination-concerns/ (reporting on the Department of Defense temporarily suspending all troop dismissals related to drug and alcohol misuse in

response to a recent Air Force Drug Testing Laboratory study confirming concerns over laboratory drug testing procedures and cross-contamination due to spillage during transit); *see, e.g.*, *Helferty v. United States*, 113 Fed. Cl. 308, 312 (2013) (reviewing a decision of the Board for Correction of Naval Records and documenting a service member's submitted evidence of record that discussed a prior cross-contamination at the same Naval drug laboratory at which the service member's urine tested positive for cocaine), *aff'd*, 586 F. App'x 586 (Fed. Cir. 2014); *United States v. Luke*, 63 M.J. 60 (C.A.A.F. 2006) (setting aside a decision of the Navy-Marine Corps Court of Criminal Appeals and remanding for an evidentiary hearing given the fact that testing performed on the accused's DNA sample may have been insufficient where U.S. Army Criminal Investigative Laboratory drug test had potentially been "cross-contaminated and/or switched [with other] samples within and between [certain] cases" and subject to other forensic misconduct).